# IN RE CERTAIN PETITIONS FOR A BINDING REFERENDUM IN THE VILLAGE OF RIDGEFIELD PARK.

Superior Court of New Jersey
Law Division

Decided April 29, 1977.

*Mr. Martin T. Durkin* for plaintiff Village of Ridgefield Park (*Messrs. Durkin & Foerst*, attorneys).

*Mr. Patrick J. Tansey* for defendant electors of the Village of Ridgefield Park.

DALTON, J. S. C. This order to show cause is brought as a declaratory judgment action pursuant to *N. J. S. A.* 2A:16–50 *et seq.*, and projects issues respecting the permissibility and propriety of an initiative-referendum petition by which numerous residents and electors of the Village of Ridgefield Park (village) seek to enact a comprehensive traffic ordinance pursuant to *N. J. S. A.* 40:74–9 *et seq.*

In May 1975 the village, organized as a commission form of government under the Walsh Act, *N. J. S. A.* 40:70–1 *et seq.*, adopted its present traffic ordinance which was intended to alleviate traffic circulation and congestion problems in the community.

Among other things the ordinance proscribes overnight parking on certain main business streets, sets out an alternate side of the street parking schedule, designates certain public thoroughfares as one-way streets, and provides

special seasonal parking regulations in order to facilitate snow plowing and removal.

Dissatisfied with certain inconveniences created by the new ordinance, numerous residents attended the village commissioners' public meetings and voiced objection. Although the ordinance was modified in part to reflect the views of these objectors, on March 21, 1977 the commissioners were served with a petition signed by some 1300 village residents and electors seeking either the enactment by the board of commissioners of a proposed new traffic ordinance or the submission of it to the binding vote of the people, pursuant to *N. J. S. A.* 40:74–9 *et seq.*

As a result of the foregoing, this action was initiated by the village which seeks a declaration that traffic ordinances as such cannot be the subject of binding referenda; that the proposed ordinance is void as violative of *N. J. S. A.* 39:4–203; that the petition need not be submitted to the commissioners nor be the subject of a referendum. Additionally, the village seeks to hold a nonbinding referendum pursuant to *N. J. S. A.* 19:37–1 at the next general election for separate consideration by the electorate of several aspects of the current traffic ordinance, and a declaration that the penalty clause of the current ordinance represents a state-wide uniform penalty fixed by act of the Legislature and thus is subject to alteration only by that body.

With respect to the gravamen of the village's complaint — the unavailability of the initiative-referendum process — it ought to be noted that the initiative-referendum enabling statutes have been afforded a liberal construction in order to facilitate greater voter participation in municipal affairs. See, *e.g., Sparta Tp. v. Spillane,* 125 *N. J. Super.* 519, 523 (App. Div. 1973). This favorable view, however, is subject to and must be construed with governing constitutional and statutory provisions. 5 *McQuillin, Municipal Corporations* (3d ed. 1969), § 16.50. Thus, where the subject matter of the referendum is one of statewide concern in which the Legislature has delegated power to a specific body or board and not to local

electors, the action is generally found to be outside the scope of the initiative-referendum process. *Smith v. Livingston Tp.,* 106 *N. J. Super.* 444, 457 (Ch. Div. 1969), aff'd o.b. 54 *N. J.* 525 (1969). Likewise, an implied limitation upon this power will be found where the subject matter of the referendum is executive or administrative in nature rather than legislative. *Cuprowski v. Jersey City,* 101 *N. J. Super.* 15 (Law Div. 1968) aff'd o.b. 103 *N. J. Super.* 217 (App. Div. 1968) ; see also, *McCrink v. West Orange,* 85 *N. J. Super.* 86 (App. Div. 1964). In *Cuprowski* the court considered these distinctions and noted some general principles which aid in characterizing any given ordinance, stating (101 *N. J. Super.* at 23) that "[m]atters which are of a permanent or general character are considered to be legislative while those which are temporary in operation and effect are deemed administrative." In this connection it has been said that an ordinance which shows an intent to form a permanent rule of government until repealed is one of a permanent nature. 5 *McQuillin, op. cit.,* § 16.55. Traffic ordinances in general are not of a permanent character. Indeed, ordinances of this type lend themselves to and are the subject of frequent change, whether that change be necessitated by the growth of the community and region or effected by the desire of the local governing body to implement what it considers to be a more efficient and effective ordinance. Thus, the character of the ordinances here in question must be seen as essentially administrative, not legislative.

Moreover, were the proposed ordinance to win the support of the electorate and the required approval of the Director of Motor Vehicles, *N. J. S. A.* 40:74–18, would render impossible its repeal or amendment except by further referendum vote.[1]. To so fetter and restrain the powers

---

[1] This statute provides in pertinent part: "Any ordinance proposed by petition, or which shall be adopted by a vote of the people, shall not be repealed or amended except by a vote of the people."

of the governing body in this community cannot properly be the result of the initiative-referendum power.

While local citizens quite understandably are especially interested in the traffic on the streets in their particular community, the control of such traffic is a matter of statewide concern. Public highways are open to all the people of the state. Every citizen has the right to use them, subject, of course, to administrative regulation. Traffic control on public thoroughfares is not, in the opinion of this court, a proper subject of the initiative process which lends itself more properly to basic changes in law policy rather than to those phases of regulation which by their nature resemble to a great degree the detailed attention usually ascribed to the administrative process.

While this question appears to be novel in this State, it has been addressed in other jurisdictions. In California two recent decisions have held that petitions challenging parking meter ordinances are not the proper subject matter for and are beyond the scope of the municipal initiative power. *Bragg v. City of Auburn,* 253 *Cal. App.* 2d 50, 61 *Cal. Rptr.* 284 (D. Ct. App. 1967); *Mervynne v. Acker,* 189 *Cal. App.* 2d 558, 11 *Cal. Rptr.* 340 (D. Ct. App. 1961); *contra, City of De Leon v. Fincher,* 344 *S. W.* 2d 743 (Tex. Civ. App. 1961); *State v. Hitt,* 155 *Ohio St.* 529, 99 *N.E.* 2d 659 (Sup. Ct. 1951). In *Bragg* and *Mervynne* the courts recognized that in California, as is the case in New Jersey, the state legislature has the power to exercise exclusive control over automobile traffic on public highways, including local streets. *N. J. S. A.* 39:4–1 *et seq.* This, of course, is not to say that municipalities cannot legislate in this field; they may, but only within the scope and through those bodies designated by statute. Pursuant to *N. J. S. A.* 39:4–197, our Legislature has delegated to local governing bodies, subject to the approval of the Director of Motor Vehicles, the power to adopt ordinances or resolutions respecting a broad scope of traffic conditions. Should the municipality deem it necessary or desirable, it may further

delegate this power to a specialized local body. See, *e.g.*, *Weinstein v. Newark*, 100 *N. J. Super.* 199, 219–20 (Law Div. 1968). It is because of the complex and oft-changing nature of local traffic conditions and because of the future hindering effect that a public referendum would have upon this matter of statewide concern that this court must conclude that the initiative-referendum process does not lend itself to the enactment or alteration of a comprehensive traffic ordinance.

This court reaches this conclusion not unmindful that the exercise of the initiative-referendum power is one of the most fundamental rights of our democratic process and that when this right is challenged, our courts have generally been inclined to resolve all doubts in favor of the use of this power. *Sparta Tp. v. Spillane, supra.* But to fail to recognize the nature and requirements of traffic management — particularly in an older, highly developed community with its constantly shifting patterns of traffic flow — is to overlook the real effect that the desired referendum would work. Subsequent changes would require a new vote of the people on each change, involving burdensome delay and expense. Each amendment would be subject to the approval of the Director of Motor Vehicles, and if a county road were affected, the Board of Freeholders. If these bodies required a small change, a new petition would have to be drawn and the process started anew.

For the foregoing reasons, the relief which the village seeks respecting the inappropriateness of the initiative-referendum process in this case is granted. Accordingly, the village's alternate bases for relief need not be addressed, save its request that it be permitted to hold a nonbinding referendum at the general election in November 1977, on certain specific aspects of the current traffic ordinance pursuant to *N. J. S. A.* 19:37–1. In view of all the circumstances of this controversy, this request appears to be the proper and practical method whereby the electors may

voice their opinion and yet not subject the village to the adverse effects of a binding referendum.

As for petitioners' motion seeking dismissal of the complaint and an order directing the village board of commissioners to either act on the petition or submit it to a referendum vote, the motion is denied.