## Trexler Lake Project Referendum

*J. Jackson Eaton, III,* for petitioner.
*John M. Ashcraft, III, Assistant County Solicitor,* and *John P. Thomas, County Solicitor,* for Lehigh County.
*William F. Kocher, Jr.,* for Election Board.

DAVISON, *J.,* September 16, 1977—This action in equity has its genesis in the determination of the Lehigh County Board of Elections to seek a *nonbinding* advisory opinion from the electorate on the Trexler Lake Project by placing on the November 1977 election ballot the following question:

"Should the proposed Trexler Lake Project, also known as the Trexler Dam, be constructed? Yes [ ] No [ ]"

The question is prefaced with the following notice to the voters:

"NOTICE: Your vote on the question below is not legally binding on any governmental body or official and is merely advisory."

Petitioner (referred to as "petitioner" or "PRO-LAKE") is an unincorporated association of citizens favoring the project which seeks to invoke the equity powers of this court to remove the question from the ballot.

The sole substantive issue raised by this proceeding is whether the county board of elections has properly placed this nonbinding advisory question on the ballot. No other substantive issue is

before the court. We do not decide the merits or demerits of the project. Moreover, the result reached is not intended to reflect the view of any member of the court on the project itself.

As appears from the stipulated statement of facts, the Trexler Lake Project is a Delaware River Basin Water Resource Development Project, authorized for creation by the Army Engineers under the Federal Flood Control Act of 1962. The dam is to be located approximately eight miles north of the City of Allentown in Lehigh County. The project will be funded by the Federal government which has already appropriated $1.3 million for preconstruction plans.

It appears that the proposed ballot question is designed to sense the spirit and inclination of the registered voters of Lehigh County.

Preliminarily, with respect to the procedural question of standing, we have examined the relative arguments on this phase of the controversy and are satisfied that petitioner has the requisite standing to bring this action. See Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. §2937.

We thus address the substantive issue. Petitioner points out, and the board of elections concedes, that there is no specific statutory basis for submitting a nonbinding advisory opinion to the citizenry. PROLAKE then argues principally that since the Pennsylvania Election Code of June 3, 1937, P.L. 1333, 25 P.S. §2601 et seq., fails to specifically authorize the presentation of an advisory question to the county electorate, it follows that we are obliged to hold that the legislature has, by its silence, forbidden this practice. In support thereof, it contends that the venerable maxim, "expressio unius est exclusio alterius" when applied to the

Election Code, leads to the incontrovertible conclusion that since the code omits any reference to advisory questions, they are ipso facto precluded. However, such a result is neither commanded by the statutory law of Pennsylvania nor is it supported by the very maxim of construction relied upon by petitioners.

The expressio principle, which means simply that the mention of one thing implies the exclusion of another, bears no application to the present case. This argument would be more persuasive if the Election Code represented a comprehensive scheme regulating the submission of issues of public concern to the voters. A studied evaluation of the Election Code makes it abundantly clear, however, that while the code does spell out election procedure (see Harrisburg Sunday Movie Case, 352 Pa. 635, 44 A.2d 46 (1945)), neither referenda nor advisory questions were sought to be delimited therein by the legislature. Moreover, and significantly, while provisions authorizing *binding* referenda on a panoply of issues appear in many different titles of our state statutes,[1] there is no un-

---

1. See, by way of illustration, the Act of April 12, 1951, P.L. 90, as amended, 47 P.S. §4-472 (local option with respect to sale or manufacturing of liquor); Act of June 24, 1951, P.L. 1206, as amended, 53 P.S. §55207 (formerly §19092-207) (whether second class township should become a first class township); Act of April 6, 1956, P.L. (1955) 1414, as amended, 55 P.S. §563.1 (mass transit); Act of August 24, 1951, P.L. 1304, 16 P.S. §12005 et seq. (creation of county health department); Act of October 25, 1973, P.L. 314, 4 P.S. §40.2, Act of July 2, 1935, P.L. 599, 4 P.S. §61, Act of April 25, 1933, P.L. 74, 4 P.S. §84 (Sunday entertainment in the form of movies, theater, exhibitions and sporting events); Act of May 1, 1933, P.L. 103, as amended, 53 P.S. §65722 (taxing fire hydrants); Act of July 12, 1972, P.L. 468, 53 P.S. §6780-102 et seq. (in-

ified comprehensive enactment to which the maxim could apply. We reject PROLAKE'S argument that the lack of any reference to advisory questions in the code amounts to an affirmative act of exclusion thereof.

PROLAKE next contends that the advisory ballot question is a threat to democratic institutions and should be forbidden absent specific statutory pronouncements. The line of cases which it relies on are readily distinguishable, for each deals explicitly with *binding* referenda under enabling legislation and represents the particular tribunal's anxiety and apprehension of the legislature's abdication to what has been figuratively denoted "mob rule." Consequently, Williams v. Rowe, 3 Pa. Commonwealth Ct. 537, 544-45, 283 A.2d 881 (1971); Bogert v. Kistler, 38 D. & C. 2d 133, 31 Lehigh 303 (1965); Klump v. Lycoming County Board of Elections, 60 Mun. 72 (1968), affirmed 434 Pa. 559, 252 A.2d 148 (1969); Roth v. Saeger, 36 Lehigh 515 (1976), cited as authority by petitioner are all inapposite.

It is both fallacious and an overstatement of the case for petitioner's counsel to have argued that what is essentially a public opinion poll poses a threat to the constitutional function of elected representatives and impedes the unfettered exercise

creasing municipal debt); Act of June 13, 1955, P.L. 173, 53 P.S. §3833 (replacing volunteer fire company with a paid department); Act of June 23, 1931, P.L. 932, as amended, 53 P.S. §36051 (recall of ordinances in third class cities); Act of June 14, 1961, P.L. 324, as amended, 24 P.S. §4402 (aid to local libraries); Act of June 24, 1973, P.L. 75, 24 P.S. §7-701.1 (construction of school projects); Act of June 23, 1931, P.L. 932, as amended, 53 P.S. §36030 et seq. (Third Class City Code initiative and referendum).

of legislative duties. Indeed, permitting the public to express its sentiment on an issue that has significant local impact may well represent the purest form of democracy upon which our great nation and this Commonwealth was founded.[2] This is particularly so here since the results do not bind those in whom the ultimate decision-making process is reposed.[3]

We are satisfied that the county board of elections' decision to submit this nonbinding advisory question to the electorate in order to ascertain their will and predilections on an issue of significant local impact, rather than being dangerous to the essence of democratic government, embodies the bedrock virtues of democracy. In view of the controversy surrounding the project, the ballot will serve as a practical method for the public to voice its opinion. Finding PROLAKE's arguments to be without merit, we are compelled to deny the relief requested.

## ORDER

Now, September 16, 1977, it is ordered that the petition of Progress Through Trexler Lake "PRO-

---

2. The county solicitor who argued on behalf of the board presented a compilation by the Pennsylvania Department of Community Affairs that during 1970-1976 some 45 advisory questions were submitted to Pennsylvania voters.

3. See In re Village of Ridgefield Park, 149 N.J. Super. 530, 374 A.2d 83 (1977), where the New Jersey Superior Court approved a nonbinding advisory opinion while at the same time enjoining a binding referendum.

LAKE") in the above-captioned matter be and the same is hereby dismissed.

John E. Backenstoe, Judge, concurring.

## CONCURRING OPINION

BACKENSTOE, *J.* — I heartily concur and join in the opinion of my learned colleagues. Nevertheless, I think some additional comments are not inappropriate.

Recognizing the precedent setting value of this court's implicit sanction of allowing the county board of elections to place nonbinding advisory questions on the ballot, despite the absence of specific statutory authorization, it is important to emphasize that the county board of elections' ability to place such questions before the electorate is not without limitation. It is not the intention of the court, nor would it be in the public interest, to open a floodgate of advisory questions on every issue of public moment. However, as in the present case, where the proposed question addresses an issue of *significant local impact* it is difficult to see what public policy would be served by not allowing a nonbinding referendum. In any case, courts should not eagerly undertake the restriction of voter franchise. Thus, notwithstanding petitioners' able argument that the county board of elections acted without specific legal authority in placing the Trexler Dam question on the November 1977 ballot, absent a demonstration of palpable harm to petitioners, waste of public funds, or illegal delegation of governmental powers, the court, in my opinion, correctly chooses to favor the conservation of democratic principles over the excessively strict application of statutory rules of construction.