## Bogert v. Kistler

*Joseph L. Rosenfeld,* for plaintiffs.

*Bernard B. Naef* and *Jack I. Kaufman,* for defendant.

KOCH, P. J., August 24, 1965.—This is an action in mandamus instituted by 10 residents and electors of the City of Allentown against defendant, who is the Clerk of the City of Allentown. The complaint avers that on September 28, 1964, plaintiffs, or persons with similar interests, presented to defendant a petition bearing the signatures of over 100 qualified electors. This petition was presented pursuant to the initiative and referendum provisions of The Third Class City Code of June 23, 1931, P. L. 932, as reenacted, amended and revised by the Act of June 28, 1951, P. L. 662, 53 PS §35101, et seq.

The complaint also avers that accompanying the aforesaid petition was a directive and a copy of a proposed ordinance. Paragraph 10 is as follows:

"The aforesaid directive and the aforesaid copy of a proposed ordinance accompanying the aforesaid petition appeared therewith as follows:

" 'Hon. George W. Kistler
Office of the City Clerk
City Hall
Allentown, Pennsylvania

" 'You are respectfully directed to prepare a petition for the submission of the following proposed ordinance to the Council of the City of Allentown, which petition shall be ready for signing at the expiration of ten days from the presentation hereof, as specifically allowed under the Session Laws of the Legislature of

the Commonwealth (1931), June 23, P. L. 932, Article X, Section 1031; 1951, June 28, P. L. 662, Section 10.2; 53 P. S. 36031).

" 'Be it ordained and enacted that the City of Allentown shall prohibit the construction of additional public housing units within its borders.' "

This suit was commenced because defendant refused to comply with the directive.

The pertinent provisions of The Third Class City Code, supra, are set forth in article X, sec. 1030, as amended by the Act of June 28, 1951, P. L. 662, sec. 10.2, 53 PS §§36030, 36031:

"Any proposed ordinance may be submitted to the council by a petition signed by the electors of any city, as hereinafter provided, except:

"(a) Proposed ordinances relating to any matter, subject or thing, which is not the subject of a referendum vote as provided in subdivision (c) of this article; or

"(b) Proposed ordinances to repeal, amend, or modify any ordinance which has been subject to the provisions of the referendum as provided in subdivision (c) of this article.

". . . The city clerk, upon the written request of one hundred qualified electors of the city, directed to him, asking for the preparation of a petition for the submission of any proposed ordinance to the council of such city, and accompanied by a copy of the proposed ordinance, shall prepare such petition within ten days, and in the meantime notice shall be published, at least one time, in one newspaper, in the manner provided by section one hundred and nine of this act, that such petition will be ready for signing at the expiration of ten days from the presentation of said request. This notice shall state the purpose for which the petition is made, the place where and when it may be signed. Fifteen days shall be allowed for signatures".

Defendant has filed preliminary objections in the nature of a demurrer. Four grounds are averred:

"1. Plaintiffs' complaint fails to state a cause of action against the Defendant since the proposed ordinance is not in the form required by the Third Class City Code.

"2. Plaintiffs' complaint fails to state a cause of action against the Defendant since the subject matter of the proposed ordinance cannot be the subject of the initiative procedure instituted by Plaintiffs.

"3. Plaintiffs' complaint fails to state a cause of action against the Defendant since the City of Allentown has no authority to enact an ordinance such as proposed by Plaintiffs.

"4. Plaintiffs' complaint fails to state a cause of action against the Defendant since the proposed ordinance is invalid because it is vague, indefinite, uncertain, and unreasonable".

We are convinced that the demurrer must be sustained on the ground that the subject matter of the proposed ordinance cannot be subject of the procedure which plaintiffs have instituted.

The proposed ordinance seeks to prohibit the construction of additional public housing units. The term "public housing" is not defined, but counsel for plaintiff in his brief and at argument made clear that the public housing contemplated falls within the provisions of the Housing Authorities Law of May 28, 1937, P. L. 955, 35 PS §1541, et seq.

The Housing Authorities Law, supra, sets forth clear findings and declarations of policy. Section 2 of that legislation, 35 PS §1542, is as follows:

"It has been determined by the General Assembly of this Commonwealth, and it is hereby declared as a matter of legislative finding that—

"(a) There exist in urban and rural communities, within the various counties of this Commonwealth, nu-

merous slums and unsafe, unsanitary, inadequate or overcrowded dwellings, which conditions are accompanied and aggravated by an acute shortage of decent, safe, and sanitary dwellings within the financial reach of persons of low income, such conditions arising from overcrowding, dilapidation, faulty construction, obsolete buildings, lack of proper light, air, and sanitary facilities.

"(b) The existence of any of the above enumerated conditions is prejudicial to the welfare of the people of this Commonwealth because such conditions—(1) encourage the spread of disease and impair public health and morals; (2) increase the hazards of fires, accidents, and other calamities which result in loss of life and property; (3) subject the moral standards of the people to bad influences which have permanent deleterious social effects; (4) increase the violation of the criminal laws of the Commonwealth so as to jeopardize the safety and well-being of the inhabitants thereof; (5) necessitate the expenditure of vast sums of public money, both by the Commonwealth and local governmental bodies, for the purpose of crime prevention, punishment, and correction, fire and accident prevention, public health service and relief.

"(c) The failure to remedy the acute dwelling shortage is directly related to the stagnation of business activity in the construction, durable goods, and allied industries which are conducted within the Commonwealth, and the stagnation of which has produced serious and prolonged unemployment, with all its injurious effects upon the welfare of the inhabitants of this Commonwealth.

"(d) Private industry alone has been and now is unable to overcome the obstacles which have prevented and are now preventing it from clearing slum areas and relieving the shortage of decent, safe, and sanitary dwellings for persons of low income, and the construc-

tion, pursuant to this act, of housing projects for persons of low income would therefore not be competitive with private enterprise.

"Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the health and welfare of the inhabitants thereof by the creation of corporate and politic bodies to be known as housing authorities. The public purposes for which such authorities shall operate shall be—(1) the clearance, replanning, and reconstruction of the areas in which slums exist; (2) the providing of safe and sanitary dwelling accommodations for persons of low income, so as to prevent recurrence of the economically and socially disastrous conditions hereinbefore described; and (3) the accomplishment of a combination of the foregoing. Such purposes are hereby declared to be public uses for which public money may be spent, and private property acquired by the exercise of the power of eminent domain".

Defendant maintains that any ordinances of the City of Allentown providing for public housing within the purview of the Housing Authorities Law are ordinances for the preservation of the public peace, health, morals and safety, and consequently fall within one of the subjects which cannot be the subject of initiative and referendum. Specifically, "subdivision (c)", referred to in clause (a) of the initiative and referendum statute, provides as follows:

"(c) Ordinances for the preservation of the public peace, health, morals, safety, and in the exercise of the police powers of the city government, and for the preservation and abatement of nuisances": Act of June 28, 1951, P. L. 662, sec. 10.4, 35 PS §36050.

We regard it as eminently clear that the proposed ordinance would seek to prevent the municipality from taking any future steps to preserve what it would deem the preservation of the public peace, health, morals and

safety within its borders. Dornan v. Philadelphia Housing Authority, 331 Pa. 209, gave judicial approval to the principle that low-cost public housing has as one of its objects the promotion of public health.

Plaintiffs contend that defendant city clerk is not empowered to exercise discretion and refuse to comply with "the aforesaid directive of plaintiffs or persons with similar interests". We concede that the city clerk's functions are of a ministerial nature, if a classification of duties became necessary. However, it must be recalled that mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty only where there is a clear legal right in the plaintiff: Travis v. Teter, 370 Pa. 326.

We are convinced that it would be pointless to compel the city clerk to proceed with the duties outlined in the initiative and referendum statute, with respect to a proposed ordinance clearly not the subject of such proceeding.

In Schultz v. Philadelphia, 385 Pa. 79, a proposed ordinance of the City of Philadelphia was adopted by the city council without observing certain requirements of the Philadelphia Home Rule Charter. The Supreme Court upheld the court below in striking down the ordinance, because the formal requirements were not complied with but also considered the question as to the substantive merits. At page 86, the court said:

"It is urged that the Court should not pass upon the validity of the proposed legislation at this time but should defer a decision thereon until after the measure shall have been voted upon at the polls. We cannot subscribe to this point of view. The question of validity has been argued before us by all parties in interest, and since, as a result thereof, we are convinced that the legislation is in fact invalid, it would seem to us to be wholly unjustified to allow the voters to give their time, thought and deliberation to the question of the desira-

bility of the legislation as to which they are to cast their ballots, and thereafter, if their vote be in the affirmative, confront them with a judicial decree that their action was in vain because of the reasons herein set forth".

Having concluded that the proposed ordinance is not the subject of referendum vote, it is unnecessary to pass upon the remaining grounds assigned by defendant as a basis for sustaining the demurrer.

### ORDER

Now, August 24, 1965, defendant's preliminary objections in the nature of a demurrer are sustained, and plaintiffs' complaint is dismissed.