## Williams et al. *v.* Rowe.

Argued September 8, 1971 before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Andrew K. Parker,* for appellants.

*E. Eugene Brosius,* for appellee.

OPINION BY JUDGE KRAMER, November 17, 1971:
This is an appeal from two orders of the Court of Common Pleas of Northumberland County: (1) refusing plaintiffs' (appellants here) Motion for a Summary

Judgment, and (2) sustaining defendant's (appellee here) Preliminary Objections to a Complaint in Mandamus.

On January 21, 1971, Paul D. Williams et al. (appellants) presented a written request to Helen Rowe (appellee), City Clerk of the City of Sunbury, asking for the preparation of a petition for the submission of a proposed ordinance to the City Council. The above mentioned "written request" was signed by one hundred eight electors of the City of Sunbury, five of whom are the petitioners below and appellants here. This procedure was intended by the appellants to set into motion the initiative process as provided for in "The Third Class City Code," Act of June 23, 1931, P. L. 932, Article X, Section 1030,* 53 P.S. 36030 et seq.

Appellants had requested that appellee prepare a petition for submission to the City Council of a proposed ordinance prohibiting the addition of fluoride to the public water system in and about the City of Sunbury. Six days later, appellee orally refused to comply with appellants' written request. It is to be noted that Section 1031 (53 P.S. 36031) provides for the city clerk to prepare such a petition for submission to city council within ten days after the written request is made by the electors. The preparation consists of public notification via newspaper that a petition will be ready for signing by the electors of the city at the expiration of ten days from the presentation of the written request to the city clerk.

On January 29, 1971, at 9:57 a.m., appellants filed a complaint in Mandamus in the office of the Prothonotary of Northumberland County. Within minutes, appellants also filed in that same action a Motion for Summary Judgment. The Sheriff of Northumberland

---

* Unless otherwise indicated, all of the section numbers cited in this opinion will refer to the Third Class City Code, *supra.*

County personally served (at 10:20 a.m. on that same date) appellee with copies of both pleadings. Later that day (at 2:30 p.m.), without prior notice to the appellee, appellants appeared in court and requested the court to issue an ex parte ruling on their motion for summary judgment, under Rule 1098* of the Pennsylvania Rules of Civil Procedure. The court, by an Order issued that day, refused to grant the motion for summary judgment.

On February 2, 1971, in response to appellants' Petition for the reconsideration of their Motion for Summary Judgment, the court issued upon appellee a rule to show cause why the Court should not reconsider appellants' motion for summary judgment. Thereafter the court received briefs and heard arguments of both parties, and on February 25, 1971, issued an order denying appellants' petition for reconsideration, and again refusing a summary judgment.

On February 16, 1971, appellee filed preliminary objections in the nature of a demurrer to appellants' Complaint in Mandamus. On March 2, 1971, appellants filed an answer to the preliminary objections with a request that they be stricken. On March 22, 1971, the court sustained the appellee's preliminary objections and dismissed the appellants' Complaint in Mandamus. In its opinion, the court ". . . concluded that the proposed ordinance is not the subject of referendum vote and therefore excepted from the initiative process under the Code. . . ."

---

* Rule 1098. Summary Judgment. "At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear, but the judgment may be opened upon cause shown. Judgment shall not be entered without prior notice to all parties unless the exigency of the case is such as to require action before notice, in which event notice shall be given as soon as possible."

The appeal before us touches upon the refusal by the lower court to grant the requested motion for summary judgment on January 29, 1971, and the refusal of the court to overrule appellee's preliminary objections on March 22, 1971.

For the purposes of this appeal, we are concerned with the issue of the scope of the initiative and referendum processes in general, and the appropriateness of the subject matter of appellants' proposed ordinance in particular. The disposition of these questions will be determinative of the instant appeal.

The proposed ordinance attempts to place criminal sanctions upon ". . . any person, firm, association, corporation, government or agency thereof, who or which shall add or shall cause to be added to the public water system in and about the City of Sunbury, County of Northumberland, Commonwealth of Pennsylvania, any substance or derivative thereof commonly known, recognized and described as FLOURIDE. . . ."

We will first turn to the Third Class City Code, *supra,* Section 1030, 53 P.S. 36030, which in pertinent part reads as follows:

"(b) INITIATIVE

"*Initiation of proposed ordinances by petition; exceptions*

"Any proposed ordinance may be submitted to the council by a petition signed by the electors of any city, as hereinafter provided, except:

"(a) Proposed ordinances relating to any matter, subject or thing, which is not the subject of a referendum vote as provided in subdivision (c) of this article. . . . The subsequent sections of the statute outline the procedures to be followed in the use of the initiative process. Subdivision (c), as referred to in the above quotation, is found at Section 1050 et seq., 53 P.S. 36050 et seq., which deals with the referendum process and in pertinent part reads:

"(c) REFERENDUM

"Referendum; exceptions

"No ordinance passed by council shall go into effect before ten (10) days from the time of its final passage, except:

"(a) Ordinances expressly required to be passed by the general laws of the State or by the provisions of any act of Assembly, or the provisions of which and the matters to be carried out thereunder are subject to the approval of an officer or tribunal of the State Government;

"(b) Ordinances providing for tax levies, annual and other appropriations, and for the exercise of the right of eminent domain;

"(c) *Ordinances for the preservation of the public peace, health, morals, safety, and in the exercise of the police powers of the city government, and for the prevention and abatement of nuisances;*

"(d) Any ordinance providing for an election to increase indebtedness, and any other ordinance which by law must be submitted to an election before it shall take effect;

"(e) Ordinances for the opening, paving, grading, or other improvement of streets or highways, when the improvement is petitioned for by a majority in number or interest of the abutting property owners;

"(f) Ordinances for the construction of sewers, and for the purpose of keeping the streets, highways, and sidewalks in good order and repair and in a safe and passable condition." (Emphasis added.)

It is the appellants' position that "no subject, matter or thing" is excepted from the referendum process under Section 1050. They reason that the only purpose of Section 1050 is to exclude the six excepted areas from the ten-day waiting period. They argue that all of the six exclusions of Section 1050 are subject to the referendum process. Once the appellants reach this

conclusion, they then insist that it follows naturally that there are no exceptions to the initiative process. They make this argument in spite of the obvious fact that ordinances in the six accepted areas may become effective immediately upon final passage by the legislative body. Their argument runs contrary to the purpose of the referendum process under which it is intended to provide for the suspension of the effectiveness of an ordinance if a petition is filed within the ten-day suspension period. It is clear to us that the General Assembly intended to exclude from the referendum process the six enumerated categories set forth in Section 1050.

It is the appellee's position that the beforementioned two sections of the Code act as a bar to the implementation of the initiative procedure in this case. Appellee asserts that the written request made by the appellants for the preparation of a petition for the submission of an ordinance to City Council may not be granted in that it touches upon a subject matter which is excluded from the use of the referendum process and thereby is excluded from the initiative process. Appellee suggests that the only possible reason for which flouride and its derivatives are added to human water supplies is that of health and safety. Consequently, the appellee argues that she is clearly barred from granting a written request to prepare an ordinance petition touching upon this subject matter.

It is important to note that in one of the appellants' pleadings they aver as fact that the purpose of the proposed ordinance via the attempted initiative procedure was an attempt "to preserve the public health."

The initiative and referendum processes run contrary to our understanding of representative government. *See Commonwealth ex rel. Heinly v. Marks,* 248 Pa. 518, 94 A. 191 (1915). To carry out the appel-

lants' position would permit a small minority percentage of the citizens of third class cities to control the efforts of the elected officials of the majority of its citizens in every legislative action or inaction. This indeed would be an intolerable situation.

The General Assembly has said through the Code (Sections 1030 through 1064) that in those governmental areas not covered by the exceptions of Section 1050, a minority of the citizens may force a reconsideration of the passage of an ordinance. In the event that city council refuses to repeal the ordinance, the electorate may nevertheless defeat the implementation of the objected-to ordinance by a majority vote. However, the electors may not force a referendum within those excepted areas. In Section 1030, the General Assembly permits the initiative process in those areas of legislation not excluded from the referendum process in Section 1050. It is clear to us from a study of the development of the initiative and referendum processes statutes that the General Assembly has intended to keep a tight rein on these processes by restrictions rather than the expansive approach as urged upon us by the appellants. *See* Act of June 27, 1913, P. L. 568,; Act of May 27, 1919, P. L. 310; Act of May 23, 1927, P. L. 378; Act of June 23, 1931, P. L. 932; and Act of June 28, 1951, P. L. 662.

The case of *Bogert v. Kistler,* 38 Pa. D. & C. 2d 133 (1965) dealt with this very same question and resolved it in the same manner as we here hold. We are of the firm belief that such an interpretation is consistent with our representative democratic form of government. It is indeed fitting that the electorate be given the opportunity to initiate some types of legislation and similarly to call into question the implementation of certain types of proposed legislation. However, the General Assembly has not extended that right to every possible area of legislation. One of the prices

paid for the creation of a representative democracy is the vesting by the electorate of trust and responsibility in its elected representatives. Discretion is placed within the hands of the municipal legislators and we must accept the lawful exercise of this discretion. The efficiency of government, its stability, and the protection of the public at large necessitates the creation of certain categories wherein the legislative prerogative is unfettered by the initiative and referendum processes. The electorate nevertheless is not helpless in defending itself against unlawful legislation in the statutorily excluded areas, for it is before our courts that one may come and assert the illegality of a particular piece of legislation. Furthermore, it is at the ballot box that a voter may express his disapproval of the legislative programs of his elected officials.

The interpretation made by this Court gives purpose and sense to both Section 1030 and Section 1050, and is in concert with the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, Article IV, Section 51, 46 P. S. 551, which reads: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. *Every law shall be construed if possible, to give effect to all its provisions.*" (Emphasis added.)

In requesting the extraordinary relief provided for by mandamus and by the Pennsylvania Rules of Civil Procedure No. 1098, *supra,* the appellants had a heavy burden to prove to the court that their right to a summary judgment was clear and free from doubt. *See Rogoff v. The Buncher Company,* 395 Pa. 477, 151 A. 2d 83 (1959) and *Travis v. Teter,* 370 Pa. 326, 87 A. 2d 177 (1952). The ruling of the trial court on a motion for a summary judgment in mandamus should not be disturbed by a reviewing court except for an arbitrary and capricious abuse of discretion or a clear violation of the law. *Commonwealth ex rel. Alessan-*

*droni v. Confluence Borough,* 427 Pa. 540, 234 A. 2d 852 (1967). We can find no such abuse or violation by the trial court in this case. Even the appellants concede that there are possible ambiguities in the Code; and this concession clouds their claim to a "clear" right.

Lastly, in connection with the trial court's ruling on the preliminary objections, in view of the fact that the appellants averred in their pleadings that their purpose involved public health, their argument that the trial court went beyond the record in making its determination that their proposed ordinance came within Section 1050(c), *supra,* is without merit.

In light of the preceding discussion, we are of the opinion that the interpretation of the initiative and referendum procedures as urged upon us by the appellee, and as stated by the well-reasoned opinion of the court below, is proper; and we therefore affirm the Order of the court below.