## Catalano v. Swanger

*N. J. Catalano,* plaintiff, p.p.

*R. Hart Beaver,* City Solicitor, for defendant.

GATES, P. J., January 2, 1973.—On December 28, 1972, plaintiff presented to us, in chambers, his pro se complaint in mandamus to compel the Lebanon city clerk to accept his petition for referendum (recall) of ordinance no. 44, known as "The General Salary Ordinance Fixing the Annual Rates of Pay of City Officers, Clerks, and employees in the Department of the Government of the City of Lebanon, Pa. . . ." This ordinance was finally adopted by defendants, Lebanon City Council, on December 26, 1972, and is to become effective January 1, 1973.[1]

The complaint says that plaintiff wants to commence a referendum proceeding under the provisions of The Third Class City Code of June 23, 1931, P. L. 932, art. X, sec. 1050, as amended, 53 PS §36050, et seq.

Plaintiff complains that the city clerk refused to accept a petition which contains signatures of more than 100 qualified electors and on its face is sufficient to initiate the proceedings.

Since the ordinance becomes operative six days after passage and three days after presentation of the complaint to us, we entered summary judgment against the city clerk, full well realizing that the city council was not without a responsive remedy

---

1. Payment of the increased salaries is conditioned upon the prior approval of the Federal Wage-Price Control Board. The old salaries are to be paid until the new schedule is approved by the Federal board.

under the provisions of Pennsylvania Rule of Civil Procedure 1098. We did not act arbitrarily. See Commonwealth et rel. v. City of Wilkes-Barre, 258 Pa. 130 (1917).

On the following day, December 29, 1972, in open court, the city solicitor petitioned us to open the judgment we summarily entered. Now we must determine if the complaint states a case. The operative facts are not disputed. The only question is a legal one.

The procedure for initiative and referendum is fully described in The Third Class City Code. There, it is provided that no ordinance passed by council shall go into effect before 10 days from the time of its final passage. There are some important exceptions which control the outcome of this case. One thing in the code is clear; not all ordinances are subject to referendum.

The code provides that, during the 10-day period, upon the request of 100 qualified electors, the city clerk must prepare a petition for reconsideration of the disputed ordinance and give public notice that the petition is ready for signing. The clerk must designate the place where and the time when the petition may be signed. If, prior to the expiration of 10 days, the petition protesting an ordinance is signed by at least 20 percent of the entire vote cast for all candidates for the office of mayor in the last preceding municipal election, the ordinance is suspended from operation, and council must reconsider it.

Upon reconsideration, if council does not repeal the ordinance entirely, it must call a special election to be held at the time of the succeeding primary election or 60 days whichever comes sooner, at which time the original ordinance is submitted to the voters. A ballot is prepared, and it must contain a question stating the nature of the referred ordinance followed by the words,

"yes" and "no." If defeated, the ordinance "shall be lost and of no effect."

As we pointed out previously, there are important exceptions to the initiative and referendum procedure. Not all ordinances are the subject of the initiative and referendum vote. The Third Class City Code specifically excepts:

"(a) Ordinances expressly required to be passed by the general laws of the State or by the provisions of any act of Assembly, or the provisions of which and the matters to be carried out thereunder are subject to the approval of an officer or tribunal of the State Government.

"(b) Ordinances providing for tax levies, annual and other appropriations, and for the exercise for the right of eminent domain."

The basis of the city's petition to open the judgment is that ordinance no. 44 falls in one or both the above categories. Obviously, if the ordinance falls in one category, it is unnecessary for us to decide whether it also falls in another one.

The city contends that ordinance no. 44 is not the subject of initiative or referendum proceedings, because it is an ordinance which it is required to pass under the general laws of the Commonwealth of Pennsylvania. Specifically, the city argues that the Act of 1931, June 23, 1931, P. L. 932, art. IX, sec. 902, as amended, 53 PS §35902, requires council to adopt ordinance no. 44. The act provides, in pertinent part, as follows:

"Council shall prescribe, by ordinance, the number, duties, and compensation of the officers and employees of the city . . ."

Upon reflection, we are satisfied that the questioned ordinance is not the subject of initiative and refer-

endum proceedings. The ordinance is one which council is required by law to pass. We arrive at this conclusion based upon legal authority and the application of common sense to the meaning of The Third Class City Code.

There is a sparsity of reported cases dealing with the initiative and referendum procedure. Our research has disclosed but two cases dealing with the problem. Nevertheless, these cases lend weighty support to our conclusion.

In the case of Williams v. Rowe, 3 Comm. Ct. 537 (1971), it was decided that the initiative provisions of The Third Class City Code were interlocked with and dependent upon the referendum process found in section 1050, et seq., 53 PS §36050. The subject matter of the case was a citizen-initiated ordinance proposing criminal sanctions upon those in government who would fluoride water. The Commonwealth Court held that the provisions of The Third Class City Code dealing with the referendum process removes ordinances relating to public health from its orbit. From this, we are taught that what we cannot initiate, we cannot recall. It is subject matter statutorily exempt from the initiative and referendum processes.

The only other reported case also supports our conclusion. In Bogert v. Kistler, 38 D. & C. 2d 133 (1965), the court was faced with a mandamus complaint to compel the city clerk to accept an initiative ordinance which would prohibit construction of public housing in the City of Allentown. The city demurred to the complaint on the ground that the subject matter of the proposed ordinance was not one which is permitted by law to be considered in an initiative and referendum proceeding. The court sustained the demurrer on the basis of the exceptions to the refer-

endum process proscribed by subsection (c) of section 1050.

We have previously expressed our displeasure with The Third Class City Code. Many of its provisions defy logic. Some of the provisions, such as initiative and referendum, are offensive to the republican form of government. The initiative and referendum processes run contrary to our understanding of representative government and, if unbridled, would superimpose a system of direct legislation upon a system of representative government. One or the other may survive, but certainly not both.

The initiative and referendum processes in third class city government represent a departure from the republican form of government which we patriotically characterize as a democracy and were initially in the nature of an experiment. With the desire to progress conservatively, typical of Pennsylvania, the General Assembly apparently decided to try the experiment within a confined field, and only to a limited extent, with the adoption of the Act of June 27, 1913, P. L. 568, art. XX, secs. 1-7. The referendum scope was limited by the following language:

"No ordinance passed by the council, except when otherwise required by the general laws of the State, or required or permitted by the provisions of this act, and except ordinances for the immediate preservation of the public peace, health, or safety, which contains a statement of their urgency, shall go into effect before ten days from the term of its final passage; . . ."

The Act of 1913 then continued by describing a referendum procedure substantially as it exists today.

In Commonwealth, ex rel., Heinly v. Marks, 248 Pa. 518 (1915), our Supreme Court struggled with the exceptions to the initiative and referendum process con-

tained in the Act of 1913. The court recognized the experimental nature of the legislation but called attention to the inherent difficulties of a statutory scheme offensive to the idea of representative government.

In the years between passage of the Act of 1913 and 1927, events occurred which compelled the legislature to amend the Act of 1913 by the adoption of the Act of May 23, 1927, P. L. 378, which eliminated all exceptions and, thereafter, no ordinance was immune from the initiative and referendum procedure.

The Act of 1927 died in infancy. Being an open invitation to a system of direct legislation, its demise was predictable. In 1931, less than four years later, the legislators adopted the present system of referendum containing substantially the same broad categories of exceptions to the process.

Judge Kramer, speaking for the Commonwealth Court in Williams v. Rowe, supra, aptly states the case for limited initiative and referendum in these words:

". . . We are of the firm belief that such an interpretation is consistent with our representative democratic form of government. It is indeed fitting that the electorate be given the opportunity to initiate some types of legislation and similarly to call into question the implementation of certain types of proposed legislation. However, the General Assembly has not extended that right to every possible area of legislation. One of the prices paid for the creation of a representative democracy is the vesting by the electorate of trust and responsibility in its elected representatives. Discretion is placed within the hands of the municipal legislators and we must accept the lawful exercise of this discretion. The efficiency of government, its stability, and the protection of the public at large necessitates the creation of certain categories wherein

the legislative prerogative is unfettered by the initiative and referendum processes. The electorate nevertheless is not helpless in defending itself against unlawful legislation in the statutorily excluded areas, for it is before our courts that one may come and assert the illegality of a particular piece of legislation. Furthermore, it is at the ballot box that a voter may express his disapproval of the legislative programs of his elected officials."

It is apparent that the submission of the Salary Ordinance no. 44 to the referendum process would create an intolerable situation. Once the process is underway, the challenged ordinance is suspended. Consequently, the city treasurer would be without authority to pay any city employe. Assuming that the city employes would continue to work until the matter is voted upon, an assumption difficult for us to accept, we would still not be out of the woods. The entire ordinance would have to be placed on the ballot and the voter faced with a simple choice of voting "yes" or "no." While the choice may be simple, the result would be complex indeed. As a practical matter, the real objection to this ordinance deals with the amount of money proposed to be paid to a certain few individuals. The voter may be well satisfied with the proposed salaries for all of the remaining employes, yet have to vote "no" in order to record his protest against the amount of money proposed to be paid to a handful of city employes. I do not believe it would be difficult to muster a small army of citizens who would agree with us that this situation would be intolerable.

In order that our holding not be construed as being overbroad, we merely decide here that proposed ordinance no. 44 is not the subject of referendum vote. Consequently, my entry of summary judgment was erroneous. Therefore, we make the following

## ORDER

And now, to wit, January 2, 1973, defendants' petition to open the judgment is granted, and the complaint in mandamus is dismissed.