Loretta Cottone et al., Appellants *v.* Janet Kulis et al., Appellees.

Argued March 2, 1983, before President Judge CRUMLISH, JR. and Judges MACPHAIL and BARBIERI, sitting as a panel of three.

*Edward C. Milburn,* for appellants.

*Walter F. Baczkowski,* for appellees.

OPINION BY JUDGE BARBIERI, June 1, 1983:

Loretta Cottone, Grace White, Diana Forsythe, Jean W. Sykes, and Rachel L. Hobson (Appellants) appeal here from an order of the Court of Common Pleas of Allegheny County sustaining a preliminary objection in the nature of a demurrer to their Complaint in Mandamus and dismissing their Petition for Peremptory Writ. We affirm.

Section 1701(b) of the Home Rule Charter (Charter) of the City of McKeesport (City) provides, in part, that

> [t]he qualified voters of the City shall have power to require reconsideration by the Council of any adopted ordinance and, if the Council fails to repeal an ordinance so reconsidered, to approve or reject it at a City election, provided that such power shall not extend to the budget or capital program. . . .

Section 1702 of the Charter, in turn, states that "[a]ny five qualified voters may commence . . . referendum proceedings by filing with the City Clerk an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form. . . ." Section 1702 further provides that upon the filing of a proper affidavit "the City Clerk shall issue the appropriate petition blanks to the petitioners' committee."

On January 7, 1982, Appellants submitted a proper affidavit to City Clerk, Janet Kulis, pursuant to the provisions of Section 1702 of the Charter, to initiate referendum proceedings on an ordinance the City Council enacted on December 14, 1981 (Ordinance 81-31) authorizing the sale of the City's water system to the Water Authority of the City of McKeesport (Au-

thority). After reviewing the ordinance in question, however, Ms. Kulis refused to release the petition blanks on the ground that Ordinance 81-31 pertained to a capital program, and hence was exempted from the Charter's referendum procedures by the provisions of Section 1701(b). In response to this refusal to release the petition blanks, Appellants filed an action in mandamus against the City Clerk, the City's mayor and the City Council, and a Petition for Peremptory Writ and Order of Court requesting peremptory judgment pursuant to Pa. R.A.P. No. 1098. A hearing on this matter was subsequently conducted on February 3, 1982, and at this hearing Ms. Kulis submitted a preliminary objection in the nature of a demurrer. Thereafter, the court entered an order dismissing the complaint with respect to the mayor and the City Council members,[1] with a separate opinion and order sustaining the preliminary objection filed by Ms. Kulis. In its decision, the court concluded that Ordinance 81-31 fell within the Section 1701(b) capital plan program. The present appeal followed.

Before this Court, Appellants initially allege that under the provisions of Section 1702 of the Charter, the City Clerk had a mandatory duty to issue the petition blanks without any consideration of the nature of the ordinance involved, and that the court of common pleas therefore abused its discretion by not granting a mandamus.[2] We disagree.

---

[1] There is no indication in the record before us that the mayor or the City Council members filed any preliminary objections. They clearly were not, however, necessary parties in the mandamus proceedings.

[2] It is well settled that mandamus is an extraordinary legal remedy which will only issue to compel the performance of a ministerial act or a mandatory duty where the petitioner has a clear legal right, the respondent has a cor-

We believe that general rules of statutory construction are applicable in interpreting the provisions of a home rule charter. Under those general rules, we must "construe a section of a statute with reference to the entire statute and not a part from its context." *Insurance Department v. Adrid*, 24 Pa. Commonwealth Ct. 270, 275, 355 A.2d 597, 599 (1976); *see also* Section 1921(a) of the Statutory Construction Act of 1972 (Act), 1 Pa. C. S. §1921(a). We must also presume that the drafters of the home rule charter did not intend a result which is absurd, impossible of execution or unreasonable. *See* Section 1922 of the Act, 1 Pa. C. S. §1922.

Here, although, as Appellants emphasize in their brief to this Court, Section 1702 states that the City Clerk *shall* issue the petition blanks to the petitioners' committee upon the submission of a proper affidavit, we believe that the Charter's referendum provisions, when read as a whole, only require the City Clerk to perform this duty when the ordinance challenged by the petitioners' committee is subject to the referendum provisions of Charter. If we were to accept Appellants' contention that the City Clerk is compelled to issue petition blanks without considering the nature of the ordinance which would be the subject of the referendum process, we would thus sanction futile conduct, possibly frivolous or misguided, which could be unnecessarily harassing to City Council and to others involved in such referendum procedures.

---

responding duty and there is no other appropriate or adequate remedy. . . . The decision whether to issue a mandamus is within the discretion of the trial court . . . and this Court's scope of review is limited to a determination of whether the lower court abused its discretion or committed an error of law. (Citations omitted.)

*Rizzo v. Schmanek*, 63 Pa. Commonwealth Ct. 547, 549, 439 A.2d 1296, 1297 (1981).

While it is true that the action taken here in this lawsuit could be deferred to some later date in the referendum proceedings, the intervening steps would be senselessly permitted to go on. Worse yet, if no one now or later chose to litigate the challenged ordinance, pursuant to the mandate of Section 1706 of the Charter, it would have to be reconsidered by the Council, and if not repealed, would be submitted to the voters within thirty days of the Council's vote. After the expense of an election had been incurred, and the ordinance had possibly been repealed, the entire referendum would then be subject to being invalidated in a judicial proceeding. Such an absurd and disruptive result could not, in our view, have been intended by the drafters of the Charter.

We note that our decision in this regard is identical to the decisions this and other courts have reached in cases involving mandamus proceedings brought to compel city clerks to initiate analogous referendum proceedings under the provisions of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 .P.S. §§35101-39701, *see Williams v. Rowe,* 3 Pa. Commonwealth Ct. 537, 283 A.2d 881 (1971); *Catalano v. Swanger,* 60 Pa. D. & C.2d 320 (1973); *Bogert v. Kistler,* 38 Pa. D. & C.2d 133 (1965), and we believe that the court of common pleas' discussion of this issue in *Bogert* is equally applicable here:

> We are convinced that it would be pointless to compel the city clerk to proceed with the duties outlined in the initiative and referendum statute, with respect to a proposed ordinance clearly not the subject of such proceeding.
>
> In Schultz v. Philadelphia, 385 Pa. 79 . . . [a]t page 86, the court said:
>
> "It is urged that the Court should not pass upon the validity of the proposed legislation

at this time but should defer a decision thereon until after the measure shall have been voted upon at the polls. We cannot subscribe to this point of view. The question of validity has been argued before us . . . and since . . . we are convinced that the legislation is in fact invalid, it would . . . be wholly unjustified to allow the voters to give their time, thought and deliberation to the question of the desirability of the legislation . . . and thereafter, if their vote be affirmative, confront them with a judicial decree that their action was in vain. . . .''

*Id.* at 139-40. Accordingly, we believe that the court of common pleas in the case *sub judice* properly addressed itself to the question of whether Ordinance 81-31 is an exempted ''capital plan'' ordinance in deciding whether a mandamus should issue.

Finally, Appellants allege that the court of common pleas erred as a matter of law by concluding that Ordinance 81-31 pertained to a capital plan and was thus exempted from the Charter's referendum procedures. We once again, however, must disagree.

The record before us shows that the City entered into a Transfer Agreement dated December 29, 1977 and a Lease Agreement dated January 1, 1978 with the Authority in which it specified the conditions under which it would sell the Authority its water system. Article II of the Transfer Agreement states, *inter alia,* that

[w]henever the Authority and the City on the recommendation of the Authority's consulting engineer, determine that extensive improvements and/or additions are needed to the water supply systems facilities, the City may, at its option, offer to sell the water supply system

facilities to the Authority and the Authority agrees to purchase the same at a price agreed upon by the parties. . . . If the sale referred to herein occurs, the Authority will combine the amount of the agreed upon sales price together with the amount to be spent in improvements and/or additions to the water supply system facilities and finance the total amount thereof through a long-term bond issue or other acceptable means of financing. The City reserves the right to undertake the said improvements and/or additions in its own right thus retaining title to the water supply system facilities. . . .

Article IV of the Lease Agreement provides in part that

[w]henever the Authority determines . . . that major improvements to or replacement of the water supply system facilities are required to meet water quality criteria, produce water as efficiently as possible and meet the expected system demand, the costs of which are to be met through bonded indebtedness, the Authority shall notify the City in writing of the nature of the improvements and/or replacements and the estimated cost thereof. Within ninety (90) days from the date of receiving such notice, the City shall advise the Authority in writing of its intention to either sell the Authority the water supply system facilities or undertake said improvements and/or replacement in its own right. . . .

If the sale of the water system facilities from the City to the Authority occurs, the Authority will finance the agreed upon purchase price by combining the amount thereof together with

the total project costs . . . through a bond issue or other acceptable means of financing. . . .
. . .

In the preamble to Ordinance 81-31, in turn, the City Council specifically finds that extensive capital improvements and/or additions to the City's water system are necessary and that it would be in the best interests of the City's residents if the capital improvements were undertaken and financed by the Authority. We do not believe that there could be a clearer instance of an ordinance pertaining to a "capital plan," and, accordingly, we believe that the court of common pleas in the present case properly concluded that Ordinance 81-31 is exempted from the Charter's referendum provisions.

ORDER

Now, June 1, 1983, the order of the Court of Common Pleas of Allegheny County, dated February 17, 1982, and docketed at No. GD82-1873, is affirmed.

DISSENTING OPINION BY JUDGE MACPHAIL:
I respectfully dissent.

While no one would fault the majority for endeavoring to spare our overloaded judicial system from futile and fruitless litigation, I am of the opinion that we cannot permit a City Clerk to draw the line for us before the citizens have even filed the necessary forms.

I view the issue presented to us as a very narrow one—does a City Home Rule Charter provision that clearly states that upon the filing of a proper affidavit, the City Clerk shall issue "appropriate petition *blanks*" (emphasis added) spell out a mandatory ministerial duty? I think it does and I do not believe

any rules of construction are necessary to interpret the charter's language. The cases cited by the majority as being analogous are concerned with the statutory provisions of the Third Class County Code. I regard the distinction between a city charter and a statutory county code to be legally significant. It seems to me that the risk of having the City Clerk cutoff at the pass efforts by citizens to achieve a referendum by following the dictates of a City Charter voted upon by those citizens, more than offsets the risk of frivolous litigation to determine whether or not the particular issue is a proper subject of a referendum.

I would reverse the trial court.