**In Re: Petition for INITIATIVE TO PREVENT the SALE AND/OR LEASE OF GRACEDALE FILED WITH the NORTHAMPTON COUNTY ELECTION COMMISSION ON JANUARY 18, 2011.**

**Appeal of: County of Northampton and John Stoffa.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 6, 2011.
Decided April 12, 2011.

Mark Stewart, Harrisburg, for appellants.

Lawrence M. Otter, Doylestown, for appellee Gracedale Initiative Petition Committee.

John R. Bielski, Philadelphia, for appellee Ellen Weiss.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge PELLEGRINI.

John Stoffa (Mr. Stoffa), the County Executive of Northampton County, and the County of Northampton (together, Objectors) appeal from the order of the Court of Common Pleas of Northampton County (trial court) denying their objection to the Gracedale Ballot Initiative Petition (Initiative) alleging that the Initiative violated Article XI, Section 1101(b) of the Northampton County Home Rule Charter. Because the initiative does not extend to the County's budget or capital program, we affirm.

This case involves a dispute over the potential sale of the Gracedale Nursing Home (Gracedale), currently owned and operated by Northampton County (County). Gracedale is the County's single largest budgetary unit, comprising over 20% of the County budget and employing approximately 700 people. The approved 2010 County budget reflects an appropriation for Gracedale of $65,640,100. Over the past several years, Gracedale has operated at a loss—specifically incurring losses of $4,743,799 in 2009 and $2,875,297 in 2010—with the County making operating transfers to Gracedale each year in order to make up the difference.

In order to help address the County's budgetary shortfalls, the Northampton County Council (Council) passed Resolution 71–2010 (Resolution) on August 19, 2010, directing Mr. Stoffa to pursue a sale of Gracedale to private entities. A number of County residents and employees of Gracedale opposed the Resolution and potential sale of the facility. The County's Home Rule Charter allows for direct citizen participation by giving registered voters the power by initiative to enact and repeal ordinances and by referendum to suspend and repeal ordinances. Article XI, Section 1101(a). However, the Home Rule Charter also places a limitation on this power as Section 1101(b) states, "[t]he power of initiative and referendum shall not *extend to the budget or capital program.*" (Emphasis added).

In response to the Resolution, a group of 12 registered voters within the County created the Gracedale Initiative Petition Committee (Committee) and commenced a petition drive to place the following proposed ordinance on the May 17, 2011 primary ballot: "The county nursing home, known as Gracedale, shall not be sold and/or leased by the County of Northampton for a period of five years from the date of the approval of this ordinance." On January 18, 2011, the Committee submitted 507 signature petitions to the Northampton County Election Commission (Commission) purportedly containing the signatures of 23,391 registered voters. The Commission initially rejected the Committee's petition on January 25, 2011. Nevertheless, the Commission instructed the Northampton County Registrar (Registrar) to conduct a thorough examination of each of the Committee's 507 petitions. After the Registrar completed her review and submitted a determination to the Commission that the Committee's submission met the 10% threshold, the Commission again reviewed the petitions. On January 31, 2011, the Committee reversed its

prior declaration, held that the Initiative conformed to the provisions of the Home Rule Charter, and certified the Petition for submission to Council for further action.

On February 3, 2011, Mr. Stoffa filed a complaint in the trial court, both individually and on behalf of the County in his official capacity, challenging the Commission's revised decision. This action sought a determination pursuant to the Declaratory Judgment Act, 42 Pa.C.S. §§ 7531–7541, that the proposed ordinance could not be enacted under the Home Rule Charter because it extended to the County's budget and capital program in violation of Article XI, Section 1101(b) of the Home Rule Charter. Section § 1.11–1101 provides:

> (a) *Reservation of Power.* In accordance with the provisions of this article, the registered voters of the County shall have the power by initiative to enact and repeal ordinances, by referendum to suspend and repeal ordinances, and by recall to remove officials from office. (b) *Limitation of Power.* The power of initiative and referendum **shall not extend to the budget or capital program,** to the appropriation of money, to the levy of taxes, or to the salaries of elected officials, officers, or employes of the County. The power of referendum shall not extend to any emergency ordinance or to any ordinance proposed by initiative. The power of recall shall extend only to the offices of County Executive, member of County Council, Controller, and District Attorney. The power of recall shall not extend to any official during the first year or during the last year of his term of office or within one (1) year after a recall election won by the official for the same office. (Emphasis added).

348 Pa.Code § 1.11–1101.

The trial court scheduled hearings and argument on the objections for February 11, 2011, solely on the legal issue of "whether the language of the Ballot Initiative violates the restrictions set forth in Article XI, Section 1101(b) of the Home Rule Charter because the question extends to the County budget or capital program." (Trial Court Opinion at 13).

Before the trial court, Objectors presented the testimony of Victor Mazziotti (Mr. Mazziotti), the Chief Financial Officer and Director of Fiscal Affairs for the County. Mr. Mazziotti testified that he was responsible for the budget and accounting functions of the County Executive's office and that he, in fact, prepared the proposed budget and capital improvements plans each year for submission to the Council as required under the Home Rule Charter. He also testified that neither the 2011 proposed budget nor the 2011 capital improvements plan contemplated or referenced the sale of Gracedale, and the final budget for 2011 did not contain any capital expenditures for Gracedale due to its potential sale. While the sale of Gracedale would be a capital event, Mr. Mazziotti insisted that it would not be included in the County's capital or budgetary plan. According to Mr. Mazziotti, the 2011 budget as proposed by County Executive Stoffa included funding Gracedale for the entire calendar year. However, Council decided only to fund Gracedale through June 2011, reducing Gracedale's budget from $66 million to $33 million because the option of selling Gracedale was under consideration.

Mr. Stoffa also testified that the sale of Gracedale was not contemplated or referenced in his 2011 proposed budget or his 2011 capital improvements plan. His 2011 budget message, which accompanied the proposed budget, merely stated that Council may wish to consider the possibility of leasing or selling Gracedale in order to cut

expenditures. Mr. Stoffa testified that if Gracedale was not sold before June 30, 2011, the County budget would have to be amended as it only provided for funding for Gracedale for approximately six months. According to Mr. Stoffa, the sale of Gracedale would have a direct impact on the County budget as there would be fewer County employees, less need for appropriations, less expenditures, and it would eliminate the need for future capital improvements at the facility.

■ The trial court denied the objection, finding that the Initiative was proper under the Home Rule Charter. The trial court noted that the mere fact that Gracedale has an impact on the yearly County budget did not preclude the Initiative as almost any subject of importance had an impact on the budget. Section 1101(b) of the Home Rule Charter only precluded ballot initiatives that "extend to the budget or capital program." Both Mr. Mazziotti and Mr. Stoffa testified that the sale of Gracedale was not referenced or contained within either the 2011 budget or capital improvements plan, and Mr. Mazziotti testified that the sale was not even a proper event for a capital plan. The trial court found that: "(1) The Ballot Initiative, if passed by the voters, would not interfere with the proposed 2011 Budget or the 2011 Budget adopted by Council; (2) The Ballot Initiative, if passed by the voters, would not interfere with the proposed 2011 Capital Improvements Plan; (3) County Council did not modify or adopt a Capital Improvements Plan or a Capital Program; (4) There is no other defined Capital Pro-

gram in Northampton County; (5) The record made by the Objector established, without any contradiction, that the sale of Gracedale would not be included or part of a Capital Plan; and (6) The Ballot Initiative, if passed by the voters will not interfere with or abrogate any existing contractual obligations of Northampton County related to the Budget or a Capital Program." (Trial Court Opinion at 19). While the Initiative would prevent the sale of Gracedale and, thus, would continue to impact the budget in the immediate future, the trial court found that the Initiative did not extend to the budget or capital program, did not violate the Home Rule Charter, and the determination of the Commission to certify the Initiative for submission to Council was proper. This appeal followed.[1]

■ On appeal, Objectors argue that the trial court erred in holding that the Initiative was proper under the County Home Rule Charter because it "extend[s] to the budget or capital program." According to Objectors, this Court's decision in *Cottone v. Kulis*, 74 Pa.Cmwlth. 522, 460 A.2d 880 (1983), holds that initiatives that prohibit legislative actions seeking to avoid or minimize capital expenditures are within the scope of the Charter's prohibition that "initiative and referendum shall not extend to the budget or capital program." It argues that if the Initiative passes, that provision would be violated because the 2011 budget would require a major revision and capital improvements would be required as well.[2]

1. When reviewing the order of a trial court concerning the validity of challenges to an election petition, our standard of review is whether there was an abuse of discretion or an error of law, and whether the findings of fact are supported by substantial evidence. *In re Flaherty*, 564 Pa. 671, 678, 770 A.2d 327, 331 (2001).

2. In *In re Voter Referendum Petition Filed August 5, 2008*, 602 Pa. 569, 581–582, 981 A.2d 163, 171 (2009), our Supreme Court struck down a referendum placed on the ballot by county council, stating "that unlike states such as California, governance by referenda is a relatively rare occurrence in Pennsylvania, where we hold strong to the ideals

In *Cottone,* city council for the City of McKeesport enacted an ordinance authorizing the sale of the City's water system to the Water Authority of the City of McKeesport. *Id.* at 881. The City's Home Rule Charter, like that in the present case, allowed citizens to challenge ordinances through referendum, "provided that such power shall not extend to the budget or capital program." *Id.* A group of citizens submitted an affidavit to the city clerk in order to commence referendum proceedings. *Id.* However, after reviewing the ordinance, the city clerk refused to release the petition blanks for the citizens to circulate because she believed the ordinance pertained to a capital program. *Id.* The petitioners filed an action in mandamus and a petition requesting peremptory judgment. *Id.* at 882. The trial court found that the ordinance was exempted from the Home Rule Charter's referendum procedures because it pertained to a capital plan. *Id.* at 883. The reason that it pertained to a capital plan was that four years prior to the enactment of the ordinance, the City and the Authority entered into a transfer agreement and a lease agreement which specified that the City could offer to sell the water supply system facilities when they required extensive improvements or replacement, which, according to city council, they did. *Id.* Because it was intertwined with the transfer agreements, we held that the matter pertained to the capital budget and struck consideration from the budget.[3]

There are substantial factual differences between this case and *Cottone:* as found by the trial court, there are no transfer or lease agreements that would be affected;

the sale of Gracedale was not contemplated or referenced in either the 2011 proposed budget or the 2011 capital improvements plan; and the approved budget for 2011 did not contain any capital expenditures for Gracedale due to its potential sale. While the County has apparently put out requests for proposals and has identified a potential buyer for Gracedale with the possibility of a sale occurring in May or June, 2011, it has not yet entered into a contract for the sale. In addition, Gracedale is not presently in need of extensive improvements or repairs as was the water system in *Cottone.* In this case, unlike *Cottone,* there is no direct impact on the budget or the capital budget making it inapposite.

Objectors are seeking to extend *Cottone* to limit the power of citizens to enact or repeal *any* ordinance, even if it is not a budget ordinance, if it has an indirect impact on the budget or capital budget ordinance as falling within the ambit of "extend[ing] to the budget or capital program." In deciding whether the Initiative that would prohibit the conveyance of Gracedale for five years "extend[s] to the budget or capital program," we have to look at the context of how those terms are used in the Home Rule Charter.

The County Home Rule Charter treats ordinances, such as the one here, and budgets as two different things. Section § 1.6–601(a) provides:

> The County Council shall act only by the adoption of an **ordinance,** resolution, **budget,** or motion. The vote of a majority of the members shall be required for the adoption of an ordinance, resolution,

---

of representative democracy and have no general constitutional provision for voter initiative or referenda.... An exception to the general rule against referenda is contained in many Home Rule Charters."

**3.** While *Cottone* is limited to that distinct factual pattern to the extent that it held that an initiative that has an indirect budgetary impact "extend[s] to the budget or capital program," it was wrongly decided.

or budget, unless otherwise provided by this Charter. The vote of a majority of a quorum shall be required for the adoption of a motion. (Emphasis added). 348 Pa.Code § 1.6–601.

Article VI of the Home Rule Charter provides the requirements of an ordinance and how ordinances are to be enacted. Section § 1.6–602 9(a) lists the matters that have to be enacted by ordinance. Pertinent to this case is subsection (6) which requires that an ordinance be enacted if it "conveys or leases or authorizes the conveyance or lease of any real property of the County."

In this case, Resolution 71–2010[4] directed Mr. Stoffa to pursue a sale of Gracedale to private entities. Under the Home Rule Charter, if Mr. Stoffa receives an offer for Gracedale, then the matter will have to come back to Council to authorize the conveyance by ordinance. Section § 1.11–1101 provides "the registered voters of the County shall have the power by initiative to enact and repeal ordinances." The Initiative's purpose is to block the conveyance of Gracedale for a period of five years from the date of the approval of this Ordinance, which is the proper subject of an ordinance.[5] While it may or may not have

4. Section 1.6–604 of the Home Rule Charter provides that "[t]he County Council shall adopt a resolution for any act which it intends to express its consensus or for any act required by law to be a resolution." 348 Pa. Code § 1.6–604.

5. The concurring opinion states that "the majority ... reasons that because the initiative power in Section 1.11–1101 of the Charter extends to the enactment of 'ordinances' and not a 'budget,' an initiative can *never* 'extend to the budget' and thus never can exceed the limitation on initiative power contained in Section 1101(b) of the Charter. If the majority's reasoning is correct, however, then the express language of Section 1101(b), limiting the power of referendum where it would 'extend to the budget,' is unnecessary." (Concurring Opinion Slip pp. 1 & 2). Relying on *Settles v. Detroit City Clerk*, 169 Mich.App. 797, 427 N.W.2d 188 (1988), the majority then goes on to elevate the term "extend" in "extend to the budget or capital program" to a test as to whether the initiative has a direct or indirect impact on the budget. This "direct or indirect" test is not that much different from what is contained in the majority opinion—an initiative that attempts to enact an ordinance that is required to be part of the budget obviously has a direct effect on the budget and one that does not have to be part of the budget enactment does not.

The concurring opinion seems to infer, though, that an initiative that is otherwise a proper subject of the Ordinance under Section § 1.6–602 9(a) can be disallowed if it directly or substantially affects the budget.

However, the Charter defines what is to be enacted by "ordinance" and what is to be enacted by "budget," and any matter that has to be enacted by County Council as an ordinance, by definition, is the subject of an initiative, even if it may have a large budgetary impact, e.g., the creation of the department that is required to be enacted by ordinance under Section § 1.6–602 9(a).

Moreover, the concurring opinion suggests that the majority's reasoning makes "extend to the budget or capital program" mere surplusage in that the Charter drafters could have just said that ordinances are the subject of initiatives and nothing more. Rather than ascribe any special meaning to that phrase as does the concurring opinion, all that language means is that Charter drafters wanted to be very specific as to what type of initiatives were not allowed. This analysis is confirmed by Section 1.11–1101(b) which states that "[t]he power of initiative and referendum shall not extend to the budget or capital program," yet it then goes on to state that initiatives and referendum do not extend to "the appropriation of money, to the levy of taxes, or to the salaries of elected officials, officers, or employes of the County ..." Under the concurring opinion's reasoning, all of the additional language is surplusage because all of those items directly "extend" to the budget. Again, rather than this language being surplusage, it is specificity on the Charter drafter's part as to what is not allowed to be enacted by initiative.

As to the citation by the concurring opinion of the reasoning in *Settles v. Detroit City Clerk*, 169 Mich.App. 797, 427 N.W.2d 188 (1988),

a budgetary impact, all the Initiative is doing is attempting to enact an ordinance prohibiting the conveyance of Gracedale for five years and does not extend to the budget or capital program.[6]

Moreover, budgets are not even considered ordinances under the Home Rule Charter. The capital and operating budgets of Northampton County are covered by Article VII of the Home Rule Charter which provides a different procedure for the enactment of budgets as opposed to the enactment of ordinances. Section § 1.7–702 entitled "Projected Financial Plan" deals with the capital budget. It provides:

(a) *Submission.* No later than one hundred fifty (150) days before the beginning of the succeeding fiscal year, the County Executive shall submit to the County Council a projected financial plan for at least the succeeding five (5) fiscal years. Such submission shall not require the sponsorship or second of a member of the County Council.

(b) *Content.* The projected financial plan shall include for each fiscal year a capital improvements plan which shall list those capital improvements pending and those proposed to be undertaken, together with the estimated cost of each capital improvement, the proposed method of financing, the estimated annual cost of operation, and a projected operating budget which shall contain a summary of estimated revenues and projected expenditures classified by program.

(c) *Public Hearing.* The County Council shall hold at least one (1) public

hearing on the projected financial plan no later than one hundred twenty (120) days before the beginning of the succeeding fiscal year.

(d) *Adoption.* No later than ninety (90) days before the beginning of the succeeding fiscal year, the County Council by resolution shall adopt the projected financial plan submitted by the County Executive or shall adopt its own projected financial plan. If the County Council fails to adopt a projected financial plan prior to ninety (90) days before the beginning of the succeeding fiscal year, the projected financial plan submitted by the County Executive shall be deemed adopted.

348 Pa.Code § 1.7–702.

The County operating budget is enacted pursuant to Section 1.7–703, which provides:

(a) *Content.* The budget shall provide a complete financial plan of all funds and activities for the fiscal year. Except as required by other law or this Charter, the budget for the succeeding fiscal year shall be in such format as the County Executive deems appropriate unless the County Council shall require a different format by a resolution adopted prior to the beginning of the then current fiscal year. In organizing the budget the County Executive shall utilize the most feasible combination of expenditure classification by fund, agency, program, purpose or activity, and object. The budget shall begin with a general summary of its contents, shall show in detail all estimated income and all proposed expenditures, including debt service, for the fis-

the Detroit City Charter does not have analogous provisions to Section § 1.6–601(a) and Section § 1.6–602 9(a) that denominate the different types of legislative enactments and what types of enactments must be passed by ordinance. It is a totally different charter

and apparently the only language both share is the phrase at issue here.

**6.** The procedure for enactment of ordinances and budgets are different. *Compare* Section § 1.6–602 9 *with* § 1.7–704.

cal year, and shall be arranged to show comparative figures for actual and estimated income and expenditures of the preceding fiscal year.

(b) *Balanced Budget.* The total of proposed expenditures shall not exceed the total of anticipated funds available.

(c) *Budget Message.* The budget message shall explain the budget in fiscal terms and in terms of work programs. It shall outline the proposed financial policies for the succeeding fiscal year, describe the important features of the budget, indicate any major changes from the current year in financial policies, expenditures, and revenues, together with the reasons for such changes, summarize the debt position, and include such other material as the County Executive deems appropriate.

(d) *Submission.* No later than seventy-five (75) days before the beginning of the succeeding fiscal year, the County Executive shall submit to the County Council a budget for the succeeding fiscal year and an accompanying budget message. Such submission shall not require the sponsorship or second of a member of the County Council.

348 Pa.Code § 1.7–703.

As can be seen, budgets and ordinances are two different things. A prohibited initiative that "extend[s] to the budget or capital program" would involve the budgeting process set forth in Title VII of the Home Rule Charter dealing with the capital or operating budget. Because the Home Rule Charter gives the citizens the "power by initiative to enact and repeal ordinances" and the Initiative here deals with a conveyance of land that is required to be enacted by ordinance, this Initiative does not "extend to the budget or capital program."

Because the Initiative involving the sale of Gracedale does not extend to the County's budget or capital program, the Initiative does not violate the County's Home Rule Charter. Accordingly, the order of the trial court is affirmed.

Judges McGINLEY, COHN JUBELIRER and SIMPSON did not participate in the decision in this case.

### ORDER

AND NOW, this 12th day of April, 2011, the order of the Court of Common Pleas of Northampton County, dated February 15, 2011, and docketed at No. C–48–CV–2011–1095, is hereby affirmed.

CONCURRING OPINION BY Judge BROBSON.

I agree with the majority that we should affirm the trial court in this case. I write separately, however, because I cannot embrace the entirety of the majority's reasoning.

Specifically, I am wary of the portion of the majority's analysis that relies so heavily on Section 1.6–601(a) of the Northampton County Charter (Charter), which provides that "[t]he County Council shall act only by the adoption of an *ordinance,* resolution, *budget,* or motion." (Emphasis added.) Based on this language, the majority concludes that Northampton County (County) regards a "budget" as separate and distinct from an "ordinance." The majority then reasons that because the initiative power in Section 1.11–1101 of the Charter extends only to the enactment of "ordinances" and not a "budget," an initiative can *never* "extend to the budget" and thus can never exceed the limitation on the initiative power contained in Section 1101(b) of the Charter. If the majority's reasoning is correct, however, then the express language of Section 1101(b), limiting the power of referendum where it

would "extend to the budget," is unnecessary and becomes mere surplusage. Because such a construction violates a well-settled principle of statutory construction, I cannot agree with it. 1 Pa.C.S. § 1921(a); *Commonwealth v. Ostrosky,* 589 Pa. 437, 450, 909 A.2d 1224, 1232 (2006) ("The legislature ... is presumed not to intend any statutory language to exist as mere surplusage and, accordingly, courts must construe a statute so as to give effect to every word."); *see Patricca v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 527 Pa. 267, 590 A.2d 744 (1991) (holding that principles of Statutory Construction Act of 1972 [1] are to be followed when construing local ordinance.)

Nonetheless, I agree with the majority that the "extends to the budget" limitation to the initiative power in the Charter cannot reasonably be read as extending to ordinances that merely have an indirect impact on a County's budget. While there is no precedent from this Court or the Pennsylvania Supreme Court directly on point, the interpretation by the Court of Appeals of Michigan of identical language in the City of Detroit Charter is persuasive:

> As to a related claim that this initiative extends to the budget and is, therefore, improper under § 12–101 of the city charter, plaintiff has accurately noted the charter limitation. However, examination of *Detroit v. Detroit City Clerk,* 98 Mich.App. 136, 296 N.W.2d 207 (1980), leads us to agree with the construction of the limitation suggested therein, namely, the initiative does not extend to matters *directly and substantially affecting the budget. Incidental or indirect impact on the budget could not be included within the limitation,* because no ordinance could be said to be totally unrelated to and without some

effect on a city's budget. The rules governing construction of statutes, also govern construction of ordinances.... This Court will construe statutes, and therefore this ordinance, to avoid, not produce, the absurd result that virtually no ordinance could be initiated under § 12–101 of the city charter. This issue is without merit.

*Settles v. Detroit City Clerk,* 169 Mich.App. 797, 808, 427 N.W.2d 188, 193 (1988) (citations omitted).

Here, the trial court made findings to the effect that the initiative at issue, if passed, would at most have an indirect impact on the County's budget. The trial court also made findings to the effect that the County's efforts to sell or lease Gracedale Nursing Home had not progressed to such a point that a transaction was a certainty or that the initiative, if passed, would impact any existing contract rights. Although the objectors dispute these findings by the trial court, and while there is arguably record evidence to support the objectors' contrary view of the facts, there is also substantial evidence in the record to support the trial court's findings. Based on the trial court's findings that the proposed initiative will not have a direct and substantial impact on the County's budget, the proposed initiative does not extend to the budget. I would therefore affirm the trial court on this basis.

Judge LEAVITT joins in this Concurring Opinion.

---

1. 1 Pa.C.S. §§ 1501–1991.