981 A.2d 163

In re VOTER REFERENDUM PETITION
FILED AUGUST 5, 2008.

In re Allegheny County Drink Tax Referendum
Directed Pursuant to Allegheny County
Ordinance No. 24–08–OR.

Supreme Court of Pennsylvania.

Argued March 4, 2009.

Decided Oct. 1, 2009.

570

Christopher C. Hoel, Hoel Law Office, Ronald D. Barber, Strassburger McKenna Gutnick & Gefsky, Pittsburgh, for Sean Connolly Casey.

Michael Henry Wojcik, Allegheny County Law Department, Charles P. McCullough, Law Office of Charles P. McCullough, Mark Wolosic, Allegheny County Division of Elections, George M. Janocsko, Allegheny County Law Department, Allan Joseph Opsitnick, Pittsburgh, for Allegheny County.

Alan Thomas Shuckrow, Strassburger, McKenna, Gutnick & Gefsky, for John E. Graf.

Before: CASTILLE, SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice BAER.

We granted review of this case to determine whether two referendum questions relating to the taxation of the sale at retail of alcoholic beverages in Allegheny County could be placed upon a ballot. In July 2007, the General Assembly enacted 53 Pa.C.S. § 8602, permitting Allegheny County to impose a tax on the sale of certain liquors and malt and brewed beverages, at a rate not to exceed ten percent.[1]

---

1. In relevant part, § 8602 entitled "Local financial support" provides,
 (a) Imposition.—Notwithstanding any other provision of law, a county of the second class may obtain financial support for transit systems by imposing one or more of the taxes under subsection (b). Money obtained from the imposition shall be deposited into a restricted account of the county.
 (b) Taxes.—
 (1) A county of the second class may, by ordinance, impose any of the following taxes:
 (i) A tax on the sale at retail of liquor and malt and brewed beverages within the county. The ordinance shall be modeled on the act of June 10, 1971 (P.L. 153, No. 7), [53 P.S. § 16131 et seq.] known as the First Class School District Liquor Sales Tax Act of 1971, and the

Pursuant to this provision, in December 2007, Allegheny County enacted the so-called "Drink Tax" at the maximum permitted rate of ten percent.[2] Allegheny County Code § 5-808A.02. In 2008, a group of citizens circulated petitions to place a referendum question on the November 2008 ballot to cap the Drink Tax at one-half of one percent, hereinafter "Voter Referendum Question." In response, County Council attempted to place its own referendum question on the ballot proposing to abolish the Drink Tax and replace the revenues lost from that abolition through an increase in the property tax, hereinafter "County Referendum Question." The Board of Elections of Allegheny County denied the placement of both questions on the ballot. Subsequently, the trial court and the Commonwealth Court affirmed the decisions of the Board of Elections. After review, we agree that the questions were properly denied placement on the ballot as they fail to meet the requirements for such placement. As the legal issues related to each referendum question differ, we address the questions in separate sections of this opinion.

## I. Voter Referendum Question

Appellant Sean Connolly Casey circulated a referendum petition, purportedly signed by more than 40,000 registered Allegheny County voters, hereinafter "Voter Referendum Petition." The Voter Referendum Petition sought to place the Voter Referendum Question on the November 4, 2008 ballot. The question proposed the following amendment to the Drink Tax:

> The tax shall be levied at a rate established by County Council not in excess of one-half of one percent (.5%) of the sale price of each beverage meeting the definition of "liquor" or "malt or brewed beverages" contained within this article.

rate of tax authorized under this subparagraph may not exceed the rate established under that act.
53 Pa.C.S. § 8602. The rate of tax authorized under the First Class School District Liquor Sales Tax is ten percent. 53 P.S. § 16134.

**2.** As of January 2009, the rate of the Drink Tax was reduced to seven percent.

Appellant Casey filed the Voter Referendum Petition on August 5, 2008.

The Allegheny County Division of Elections determined that the Voter Referendum Petition facially satisfied the number of signatures required by the Allegheny County Code and the Allegheny County Home Rule Charter, hereinafter "Home Rule Charter." After the sitting Board of Elections recused itself due to public statements made by its members on the issue, the Allegheny County Court of Common Pleas appointed three judges to serve as temporary members of the Board of Elections and to hear the case in that capacity. The temporary Board of Elections rejected the proposed referendum on September 2, 2008. Appellant Casey appealed to the Court of Common Pleas of Allegheny County.

Court of Common Pleas President Judge Joseph James held a hearing on the matter, and on September 15, 2008, affirmed the decision of the Board, concluding that the referendum question could not be placed on the ballot. In its opinion, the trial court considered whether the Voter Referendum Question would be binding on the County, a requirement for referenda under the Allegheny County Code. Allegheny County Code, § 5–1101.02(C)(2) ("Every referendum question must be binding. Nonbinding referendum questions are expressly prohibited."). Rather than presenting a binding question, the court concluded that the Voter Referendum Question would be merely advisory. The court observed that County Council, under the Home Rule Charter, has the authority to adopt rates of taxation, and that the Appellant failed to demonstrate how the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§ 2901 et seq. (hereinafter "Home Rule Law"), Allegheny County's Home Rule Charter, or the Allegheny County Code limits or transfers that power from County Council such that the tax rate adopted by County Council could be limited by voter referendum. Accordingly, the trial court concluded that the Voter Referendum Question could not be placed on the ballot because it was non-binding.

The Commonwealth Court affirmed the decision, adopting the analysis set forth in the trial court's opinion, and thereby

denying placement of the Voter Referendum Question on the ballot. Appellant Casey filed a petition for allowance of appeal, which this Court granted.[3]

Before this Court, Appellant Casey asserts that the Voter Referendum Question meets all the requirements to qualify for placement on the ballot in Allegheny County, specifically that the question is binding rather than advisory. To refute the courts' conclusion that the question is impermissibly non-binding, Appellant must establish that the authority to set tax rates is not exclusively reserved to County Council, and thus, that the rate of the Drink Tax could be limited by a binding referendum.

Appellant's arguments in this regard center on an evaluation of the provision of Home Rule Law that sets forth the limitations on the taxing power of municipal governments, 53 Pa.C.S. § 2962(b).[4] To prevail, Appellant must demonstrate

3. We granted allowance of appeal to address various questions. Our order read as follows:

1) Whether the Allegheny County Drink Tax is a "tax imposed on nonresidents" within the meaning of 53 Pa.C.S. § 2962(b)?

(2) Whether the voters of Allegheny County may limit the rate of the Drink Tax by voter-initiated referendum?

The parties are also directed to address the following additional issues:

(3) Whether the referendum proposed by petitioner is binding or non-binding?

(4) If the referendum proposed by petitioner is non-binding, whether specific constitutional or statutory authority is required before such measures may be placed on the ballot.

In addressing these issues, the parties are directed to follow the principles of statutory interpretation set forth in the Statutory Construction Act, 1 Pa.C.S. § 1901, *et seq.*, in order to ascertain the meaning of Section 2962(b) of the Municipalities Code, 53 Pa.C.S. § 2962(b).

*In re Voter Referendum Petition Filed August 5, 2008*, 599 Pa. 153, 960 A.2d 834 (2008).

Although in granting review of this case we intended to speak to the statewide issue of whether specific statutory authority would be required to place a question on the ballot if the question was non-binding, we cannot reach that issue in this case because, as discussed herein, the Allegheny County Code specifically forbids non-binding referendum questions.

4. As is relevant to issues of taxation, § 2962 provides as follows:

§ 2962. Limitation on municipal powers

that the County Council does not have the exclusive authority to set taxation rates, despite language in the first and third sentences of § 2962(b) that suggest otherwise and the absence of any overt language in § 2962(b) providing for the setting of tax rates by referendum. As explained in detail below, Appellant first claims that the authority to set the rate of the Drink Tax is not solely within the province of County Council because the first sentence of § 2962(b) provides that County Council's rate setting authority may be limited by, *inter alia*, the Home Rule Charter, which provides for referendum. Second, Appellant argues that the Drink Tax does not fall within

(a) Powers granted by statute.—With respect to the following subjects, the home rule charter shall not give any power or authority to the municipality contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable to a class or classes of municipalities:

(1) The filing and collection of municipal tax claims or liens and the sale of real or personal property in satisfaction of them.

* * * * * *

(6) The fixing of subjects of taxation.

(7) The fixing of the rates of nonproperty or personal taxes levied upon nonresidents.

(8) The assessment of real or personal property and persons for taxation purposes.

(b) Taxing power.—Unless prohibited by the Constitution of Pennsylvania, the provisions of this subpart or any other statute or its home rule charter, a municipality which has adopted a home rule charter shall have the power and authority to enact and enforce local tax ordinances upon any subject of taxation granted by statute to the class of municipality of which it would be a member but for the adoption of a home rule charter at any rate of taxation determined by the governing body. No home rule municipality shall establish or levy a rate of taxation upon nonresidents which is greater than the rate which a municipality would have been authorized to levy on nonresidents but for the adoption of a home rule charter. The governing body shall not be subject to any limitation on the rates of taxation imposed upon residents.

* * * * * *

(h) Levying taxes.—This section does not limit or take away any right of a municipality which adopts a home rule charter from levying any tax which it had the power to levy had it not adopted a home rule charter.

(i) Establishment of rates of taxation.—No provision of this subpart or any other statute shall limit a municipality which adopts a home rule charter from establishing its own rates of taxation upon all authorized subjects of taxation except those specified in subsection (a)(7)....

the final sentence of § 2962(b), which explicitly provides County Council with the exclusive authority to set the rates of taxation on residents. Appellant argues instead that the Drink Tax is a tax on nonresidents, governed by the second sentence of § 2962(b), which does not include a grant of exclusive rate-setting authority to County Council. We address each of these arguments in turn.

■ The first sentence of § 2962(b) provides:

Unless prohibited by the Constitution of Pennsylvania, the provisions of this subpart or any other statute or its home rule charter, a municipality which has adopted a home rule charter shall have the power and authority to enact and enforce local tax ordinances upon any subject of taxation granted by statute to the class of municipality of which it would be a member but for the adoption of a home rule charter at any rate of taxation determined by the governing body.

53 Pa.C.S. § 2962(b). Casey has admitted that, "if it were not for the introductory clause to the first sentence of § 2962(b), the sentence would appear to support the Board of Elections' interpretation by placing the sole discretion for setting tax rates in the hands of the 'governing body.' i.e., County Council." Casey Notice of Appeal to the Court of Common Pleas at unnumbered page 5. Casey claimed, "The introductory clause of the sentence, however, modifies the rule by making clear that Council's power is subject not only to contrary provisions of State law, but also to contrary provisions of the County's own Home Rule Charter." *Id.* He contends that the Home Rule Charter limits the "governing body's" authority to set rates of taxation because the Charter provides that "[t]he voters of the County shall have the power to propose ordinances by petition for consideration by voters of the County." Home Rule Charter Art XII, § 2(a). He essentially argues that because the Home Rule Charter allows for voter referendum generally, then it follows that such referendum could

53 Pa.C.S. § 2962.

specifically limit County Council's rate-setting authority.[5] Given that County Council's rate setting authority is limited under the introductory clause of the first sentence of § 2962(b), Appellant claims that the Voter Referendum Question, limiting the rate of the Drink Tax, would be binding. If it were binding, then it could be placed on the ballot in accordance with the Allegheny County Code.

Appellant next turns to the second and third sentences of § 2962(b), which address specific concerns regarding taxation of residents and nonresidents:

> No home rule municipality shall establish or levy a rate of taxation upon nonresidents which is greater than the rate which a municipality would have been authorized to levy on nonresidents but for the adoption of a home rule charter. The governing body shall not be subject to any limitation on the rates of taxation imposed upon residents.

53 Pa.C.S. § 2962(b). The Home Rule Law defines "resident" to include any "person or other entity living in or maintaining a permanent or fixed place of abode in a municipality or conducting or engaging in a business for profit within a municipality." 53 Pa.C.S. § 2902. Under these sentences, Appellant attempts to frame the Drink Tax as a tax on nonresidents in order to avoid the provision of § 2962(b) stating that the governing body has the exclusive authority to set the rates of taxation imposed upon residents.

In attempting to prove that the Drink Tax is not a tax on residents, Appellant develops the history underlying the distinction between residents and nonresidents. He notes that prior to the Home Rule Law, municipalities were limited by statewide statutes that dictated both the subjects and rates of taxes that municipalities could impose. One of the benefits of adopting home rule was that the Home Rule Law allowed municipalities to have complete authority in setting the rates

5. Appellant also observes that the Home Rule Charter does not specifically prohibit referendum relating to the Drink Tax, even though it does prohibit referendum to set the rates for property taxes, hotel room rental tax, and sales and use tax. Allegheny County Administrative Code 5–1101.02(C)(3).

of taxation on residents, which provided greater flexibility on fiscal issues. Appellant emphasizes, however, that municipalities remained subject to statewide limits for taxation rates imposed on nonresidents. In addition to the second sentence of § 2962(b), Appellant notes that § 2962(i) provides that "[n]o provision of this subpart or any other statute shall limit a municipality which adopts a home rule charter from establishing its own rates of taxation upon all authorized subjects of taxation except those specified in subsection (a)(7)," which includes "[t]he fixing of the rates of nonproperty or personal taxes levied upon nonresidents." 53 Pa.C.S. § 2962. Appellant asserts that the distinction between residents and nonresidents was intended to protect nonresidents who could not voice their opposition to unreasonable tax rates, as could residents, by voting the governing body out of office.

Applying these terms to the Drink Tax, Appellant contends that the Drink Tax cannot be a tax on residents because County Council is subject to the General Assembly's imposition of a rate cap of ten percent pursuant to 53 Pa.C.S. § 8602, *supra* note 1. Therefore, he argues that the Drink Tax cannot fall under the third sentence of § 2962(b) which states, "[t]he governing body shall not be subject to any limitation on the rates of taxation imposed upon residents." He also argues that the Drink Tax cannot fall under the third sentence because it can be, and is, imposed on residents and nonresidents alike. Under Appellant's logic, because the Drink Tax is not a tax on residents alone, the third sentence of § 2962(b) of the Home Rule Law does not prevent the rate of the Drink Tax from being limited by voter referendum. Therefore, if the rate of the Drink Tax can be limited by voter referendum, then the Voter Referendum Question would be binding, and thus permissible under the Allegheny County Code, in contrast to the holdings of the courts' below.

As discussed in detail below, the County's arguments also hinge on the three sentences of § 2962(b). In contrast to Appellant, the County concludes that the rate of the Drink Tax is within the exclusive authority of County Council because it is a tax on residents. If the rate of the Drink Tax is

within the authority of County Council, the County contends that any referendum attempting to set a limit on that rate is impermissible because it would be advisory, as decided by the courts below.

The County asserts that the first sentence of § 2962(b) merely states the general policy that the municipality may exercise any taxing authority that would be available to it if it were not a home rule municipality, unless prohibited by the constitution, a state statute, or the home rule charter. The County rejects Appellant's implication that the inclusion of referenda procedures in the Home Rule Charter constitutes a prohibition regarding County Council's authority to set the rates of taxation, as contemplated by the introductory clause of the first sentence of § 2962(b). The County observes that no provision of the Home Rule Charter prohibits County Council from setting the rate of the Drink Tax, but instead it merely permits ordinances to be enacted by referendum.[6] Therefore, the County asserts that because nothing in the first sentence of § 2962(b) indicates that a referendum could limit a governing body's rate-setting authority, then any referendum attempting to set a rate limit would be merely impermissibly advisory.

Turning to the second and third sentences of § 2962(b) and their differing treatment of taxes on residents and nonresidents, the County asserts that the Drink Tax is a tax on residents, which cannot be subject to a referendum setting a rate cap. The County suggests that Appellant's view of the term "resident" is erroneously synonymous with "voter." Instead, the County argues that "resident" is broader, noting that it is defined to encompass "[a]ny person or other entity living in or maintaining a permanent or fixed place of abode in a municipality or conducting or engaging in a business for profit within a municipality." 53 Pa.C.S. § 2902. The County argues that the definition in essence applies to anyone in-

6. Indeed, the County argues, "[t]here is no unfettered, substantive right to exercise the initiative and referendum processes." Brief of Appellee County at 8. Instead, the County contends that the referendum process runs counter to the concept of representative government as exercised in Pennsylvania.

volved in taxable, economic activity within the County includ-
ing business travelers, students, and non-business travelers
maintaining a "fixed place of abode," which the County appar-
ently interprets to include an overnight hotel stay. The only
persons excluded from the term, the County suggests, would
be day-trippers. Accordingly, the County asserts that the
Drink Tax applies predominately to residents, under its inter-
pretation of the term.

Therefore, the County argues that the second sentence of
§ 2962(b), regarding tax rates on nonresidents, does not apply
to the Drink Tax because the Drink Tax is not aimed specifi-
cally at nonresidents. The County, however, concludes that
the third sentence, regarding residents, does apply to the
Drink Tax because it falls almost exclusively on residents. It
notes that the Commonwealth Court has prohibited referenda
related to the rate of taxation on residents. Relying on
*Musewicz v. Cordaro*, 925 A.2d 172 (Pa.Cmwlth.2006), the
County notes that the Commonwealth Court concluded that
§ 2962(b) superseded a provision in the relevant municipality's
home rule charter that required any millage rate increase in
excess of five percent to be approved by a voter referendum.
Concluding that a property tax constituted a tax on residents,
the court held that referendum requirement constituted a
limitation on the governing body's authority to set the tax rate
for residents, which conflicted directly with the final sentence
of § 2962(b), stating "[t]he governing body shall not be subject
to any limitation on the rates of taxation imposed upon
residents." The County argues that under the Common-
wealth Court's decision in *Musewicz*, § 2962(b) vests County
Council, as the governing body, with the sole and exclusive
authority to determine the rates of taxation, which makes a
referendum to set limits upon the rates of taxation advisory,
and thus impermissible under the Allegheny County Code.[7]

7. The County also asserts that the Voter Referendum Question violates
 the provision of the Home Rule Charter requiring a balanced budget,
 given that the Voter Referendum Question purports to slash the rate of
 the Drink Tax but does not substitute any other source of revenue or
 propose cuts in spending. The County additionally argues that the
 Voter Referendum Question would be non-binding because further

 The question of whether the courts erred in preventing the placement of the Voter Referendum Question, or the County Referendum Question discussed below, on the Allegheny County ballot is a pure question of law. Accordingly, our scope of review is plenary and our standard of review is *de novo*. *Clifton v. Allegheny County*, 600 Pa. 662, 969 A.2d 1197, 1209 n. 17 (2009). Moreover, in reviewing the decision of a local agency, such as the Allegheny County Board of Elections, "we are required to affirm unless we determine that constitutional rights were violated, that an error of law was committed, that the procedure before the agency was contrary to the statute, or that necessary findings of fact were unsupported by substantial evidence. 2 Pa.C.S. § 754(b)." *Colville v. Allegheny County Retirement Bd.*, 592 Pa. 433, 926 A.2d 424, 430 (2007). Additionally, as the questions in this case revolve around § 2962(b), we are bound by the rules of statutory construction which instruct, *inter alia*, that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921.

Initially, we note that unlike states such as California, governance by referenda is a relatively rare occurrence in Pennsylvania, where we hold strong to the ideals of representative democracy and have no general constitutional provision for voter initiative or referenda. *See English v. Commonwealth*, 845 A.2d 999, 1002 (Pa.Cmwlth.2004) ("[N]either Article I, Section 2 nor any other provision of the Pennsylvania Constitution provides an unlimited right to challenge laws via initiative and referendum."); Governor's Center for Local Government Service, Pennsylvania Department of Community and Economic Development, REFERENDUM HANDBOOK (1999). Instead, referenda are limited to areas of the law that are specifically identified either in our Constitution or by act of the General Assembly.[8] The General Assembly has provided

councilmatic action would be required to set the actual tax rate, and thus that the question was impermissible under the Allegheny County Code, which does not permit non-binding referendum on the ballot.

8. Subjects upon which referenda are specifically allowed include the following areas: establishment of community courts, Pa. Const. Art V,

for referenda related to taxation for a very limited list of topics including a local library tax, 24 P.S. § 4402; an open space tax, 32 P.S. § 5007.1; special taxes in boroughs and townships, 53 P.S. §§ 46302, 68206; and an earned income tax, 53 P.S. § 8703. An exception to the general rule against referenda is contained in many Home Rule Charters, including that of Allegheny County.

In 2000, Allegheny County adopted the Home Rule Charter, which in relevant part, provided for the rights of initiative and referendum. The preamble to the Charter provides, "We the people of Allegheny County, Pennsylvania, believe that: ... [a] home rule government that permits initiative and referendum will respond to the concerns of its citizens." Article XII of the Home Rule Charter sets forth three areas for voter involvement. First, "voters of the County shall have the power to propose ordinances by petition for consideration by County Council." Home Rule Charter, Article XII, § 1 (entitled "Agenda Initiative"). Section 2, entitled "Voter Referendum," provides, "voters of the County shall have the power to propose ordinances by petition for consideration by the voters of the County." Home Rule Charter, Article XII, § 2(a).[9]

§ 6; consolidation or boundary changes between municipalities, Pa. Const. Art IX, § 8; the construction of a county tuberculosis hospital, 16 P.S. § 5315; the authorization of health departments, 16 P.S. § 12005; authorization for school construction, 24 P.S. § 7-701.1; changes in ward boundaries, 25 P.S. § 2742; authorization of voting machines, 25 P.S. § 3002; issues related to the liquor code, 47 P.S. § 4-472; inclusion in the Pennsylvania Municipal Retirement System, 53 P.S. § 881.107; the establishment or dissolution of an environmental improvement compact covering two of more municipalities, 53 Pa.C.S. § 2521; various issues related to fire protection and ambulance services, e.g. 53 P.S. § 3832; debt authorization, 53 Pa.C.S. § 8041; the change in classification of a municipality, e.g. 53 P.S. § 45202; the sale of borough waterworks, 53 P.S. § 47409; the number of municipal officers, e.g. 53 P.S. 65402; prohibition of horse racing tracks, 53 P.S. § 66549; and issues relating to forest lands, 72 P.S. § 3543. *See* Governor's Center for Local Government Service, Pennsylvania Department of Community and Economic Development, Referendum Handbook (1999).

9. Specifically regarding Voter Referendum, the Home Rule Charter provides as follows:

Voter Referendum.

Voter referendum questions must be germane to County government and involve a single subject, clearly expressed in the title. *Id.* Moreover, the petition seeking a voter referendum must be signed by voters of the County comprising five percent of the number of voters who voted in the most recent gubernatorial election, which currently requires approximately 23,000 voters. *Id.* Article XII, § 2(b). If approved by the voters, the ordinance proposed in the referendum question "shall become effective in accordance with its terms" and "shall not be subject to veto and shall not be amended or repealed by County Council for two years following its approval." *Id.* Article XII, § 2(d). Finally, the third method of voter involvement is amending the Home Rule Charter through a referendum initiated by ordinance of County Council or by petition of voters. Home Rule Charter, Article XII, § 3 (entitled "Amendment of the Charter").

The Allegheny County Code excludes referenda on certain subjects, and requires the referendum to be binding.[10] As

a) The voters of the County shall have the power to propose ordinances by petition for consideration by the voters of the County. Each proposed ordinance shall be germane to County government and limited to one subject which shall be clearly expressed in its title.
b) The proposed ordinance detailed in any petition signed by voters of the County comprising five percent of the number of voters in the County voting for the Office of Governor in the most recent gubernatorial general election shall be placed on the ballot and considered by the voters at the next primary, municipal or general election.
c) Procedures for referendum petitions shall be established in the Administrative Code.
d) If approved by a majority of those voting, the ordinance shall become effective in accordance with its terms. Any ordinance that has been approved by referendum shall not be subject to veto and shall not be amended or repealed by County Council for two years following its approval.
Home Rule Charter Art. 12, § 2.

10. Restrictions on agenda initiative and voter referendum power.
(1) Each proposed Ordinance shall be germane to County Government and limited to one subject which shall be clearly expressed in its title.
(2) Every referendum question must be binding. Nonbinding referendum questions are expressly prohibited.
(3) As the powers of the [sic] are determined by applicable law, the following areas cannot be the subjects of agenda initiative or of voter referendum:

none of the limitations on referenda in the Administrative Code relate directly to the Drink Tax, we must determine whether the Voter Referendum Question imposing a cap on the Drink Tax would be binding or, alternatively, whether County Council has the exclusive authority to set the rate of taxation of the Drink Tax.

No one disputes that County Council has the authority to set the rate of the Drink Tax subject to the ten percent cap set by the General Assembly. The question is the exclusiveness of that authority, and whether a referendum on the rate of the Drink Tax could bind County Council.

■ Appellant Casey aptly states that all parties agree that this case is controlled by the three sentences constituting § 2962(b) of the Home Rule Law: "the first sentence states a rule applicable to all local tax ordinances that a Home Rule municipality might enact; the second sentence, by its terms, applies only to 'taxation upon nonresidents;' the third sentence, ... applies only to 'taxation imposed upon residents.'" Appellant Casey Brief at 11. Both sides of this dispute attempt to define the Drink Tax either as a tax on residents or

(a) The filing and collection of municipal tax claims or liens and the sale of real or personal property in satisfaction thereof;
(b) The procedures for exercising powers of eminent domain and the assessment of damages and benefits for property taken, injured or destroyed;
(c) Boundary changes;
(d) Regulation of public schools;
(e) Registration of electors and conduct of elections;
(f) The fixing of the subjects of taxation;
(g) The fixing of the rates of non-property or personal taxes levied upon nonresidents;
(h) The assessment of real or personal property and persons for taxation purposes;
(i) Defining or providing for the punishment of any felony or misdemeanor;
(j) Municipal planning under the Pennsylvania Municipalities Planning Code; *Editor's Note: See 53 P.S. § 10101 et seq.* and
(k) Property tax rate limits.
[1] Property tax rate limits established for the County as of May 20, 1997; and
■ The Hotel Room Rental Tax (16 P.S. § 4970.2 et seq. and 16 P.S. § 3000.3061) and the optional Sale and Use Tax (16 P.S. § 6101 B. et seq.).
Allegheny County Administrative Code 5–1101.02(C)(1–3).

as a tax on nonresidents, because each moniker benefits the parties' contrary arguments. The reality of the identity of the tax, however, was best expressed during the hearing before President Judge James, where one of the attorneys noted: "[In] both the watering holes I visited over that weekend, both in Allegheny County, there was no inquiry made whether [I] was a resident or nonresident before there was a drink tax imposed on my beverage of choice." Hearing of September 15, 2008 at 13. We conclude that the Drink Tax is neither a tax on residents nor is it a tax on nonresidents. Instead it is a tax on both and thus does not fall under either the second or third sentence of § 2962, but rather, fits securely under the first sentence addressing all local tax ordinances.[11]

As previously stated, the first sentence provides:

Unless prohibited by the Constitution of Pennsylvania, the provisions of this subpart or any other statute or its home rule charter, a municipality which has adopted a home rule charter shall have the power and authority to enact and enforce local tax ordinances upon any subject of taxation granted by statute to the class of municipality of which it would be a member but for the adoption of a home rule charter at any rate of taxation determined by the governing body.

53 Pa.C.S. § 2962(b). Putting aside the introductory clause, the sentence in relevant part provides that a municipality shall have the power to enact local tax ordinances upon any subject of taxation at any rate of taxation determined by the governing body. All parties acknowledge the term "governing body" refers to County Council and does not encompass voters engaging in the referendum process. Therefore, the plain language of this portion of the sentence provides that County Council shall set the rate of taxation. There is no provision for that rate to be set by voter referendum. Indeed, Appellant Casey has admitted that without the opening provision of the

11. As the case relied upon by the County, *Musewicz v. Cordaro*, 925 A.2d 172 (Pa.Cmwlth.2006), involved the determination that property taxes were taxes on residents and thus controlled by the third sentence of § 2962(b), we conclude that that case does not apply to the case at bar, even though it is consistent with our resolution.

sentence, the tax rate would be within the exclusive authority of County Council.

Respectfully, we reject Appellant Casey's argument that the opening clause alters the analysis. He claims that County Council's ability to set the rate of taxation is limited by the phrase "[u]nless prohibited by ... provisions ... of its home rule charter" because the Home Rule Charter provides for voter referendum questions. The flaw in this reasoning is that the Home Rule Charter's allowance of voter referenda simply does not equate to a prohibition against County Council setting the rate of taxation. Indeed, rather than prohibiting County Council from setting the rates of taxation, the Home Rule Charter charges County Council with the setting of tax rates in order to attain a balanced budget.[12] The opening clause of the first sentence of § 2962(b) says nothing that suggests that County Council's authority to set the rates of taxation could be limited by a later passed referendum, instead it speaks in terms of a prohibition of Council's rate setting authority by a constitution, a charter, or a statute— none of which exists in this case.[13]

12. The Home Rule Charter provides for County Council to have the authority and duty to set the rates of taxation in the process of attaining a balanced budget:

Adoption.

* * * *

b) Prior to the adoption of the annual operating budget, County Council shall have adopted such rates of taxation that, together with all other estimated revenue, shall raise a sufficient sum to meet annual budgeted expenditures. Adoption of the annual operating budget shall constitute the appropriation of the amounts specified as expenditures from the funds indicated.

c) All tax rates shall be adopted by ordinance. Real estate tax rates and revenues shall be subject to the limitations established in this Charter. Any ordinance changing the real estate tax rates shall require an affirmative vote of at least two-thirds of the seated Members.

Home Rule Charter, Art. VII, § 4.

13. Appellant Casey also cites to a specific Allegheny County Administrative Code prohibition against referenda related to the rates of specific other local taxes such as the hotel tax and the sales and use tax as a suggestion that referenda regarding the Drink Tax are allowable by default. However, the prohibition against referendum related to specif-

Accordingly, if County Council has sole authority to set the rate of taxation, then any referendum modifying that rate would be merely advisory. As all parties agree that advisory referenda are not permissible under the Allegheny County Code, this referendum is likewise impermissible. Therefore, we conclude that § 2962(b) of the Home Rule Charter Law provides home rule municipalities with the authority to enact local taxes at any rate determined by the municipality's governing body, which in this case is the Allegheny County Council, unless prohibited by the Constitution, another statute, or the home rule charter. In contrast, § 2962(b) does not suggest that a voter referendum could limit the governing body's authority to determine the rate of taxation. Consequently, the Voter Referendum Question constitutes a nonbinding, advisory referendum because County Council has the authority, subject to any limitations placed upon it by the General Assembly, to set the rate of the Drink Tax. As the referendum question is advisory, it is impermissible under the Allegheny County Code. Allegheny County Code § 5–1101.2(C)(2). Accordingly, we affirm the decision below regarding the Voter Referendum Question.

## II. County Referendum Question

In apparent response to the Voter Referendum Petition, County Council passed two ordinances relating to its own proposed referendum question. First, on July 15, 2008, County Council passed Ordinance No. 23–08, purporting to confer the power to initiate referenda onto County Council by adding a new subsection to the Allegheny County Code, § 5–1101.02(B)(2). Under the new subsection, County Council could propose a referendum question without meeting the signature requirements, which as noted require the signatures of voters equal to five percent of those voters who participated in the most recent gubernatorial election. On July 29, 2008, using the power purportedly conferred by Ordinance 23–08, County Council enacted Ordinance No. 24–08, which sought to place the following question on the then upcoming ballot:

ic taxes does not constitute a prohibition against the governing body setting other rates of taxation.

Shall the County enact an ordinance to increase real estate taxes in order to repeal the alcoholic drink tax?

Additionally, the ordinance provided for the provisional amendment of the Allegheny County Code to accomplish the repeal of the Drink Tax and the increase of the real estate tax to compensate for the revenue lost due to the abolition of the Drink Tax. The ordinances were both approved by the County Executive. The County Referendum Question was deemed facially complete by the Division of Elections.

On September 2, 2008, the temporary Board of Elections concluded that, like the Voter Referendum Question, the County Referendum Question was also insufficient. The County filed an appeal to the Court of Common Pleas of Allegheny County, which heard the case in conjunction with the appeal of the Board of Elections' decision denying the Voter Referendum Question of Appellant Casey. John E. Graf, an Allegheny County resident and owner of The Priory, a lodging and dining establishment, and County Councilmember Charles McCullough, hereinafter, "Appellees," filed petitions to intervene on September 12, 2008, which the court granted. After a hearing on the matter, the Court of Common Pleas affirmed the denial of the placement of the question on the ballot. The court based its affirmance on the same rationale used in the Voter Referendum case, finding the question to be advisory given that the power to set the rate of a tax is vested solely in County Council, not the voters. Indeed, the court filed one opinion addressing both referendum questions. Similarly, the Commonwealth Court affirmed the decision to keep County Council's question off the November 2008 ballot, adopting the analysis of the Court of Common Pleas. The County filed a petition for allowance of appeal to this Court, which we granted and heard argument in conjunction with the Voter Referendum Petition case.[14]

14. The issues granted by this Court are:
 (1) Whether the Trial Court and Commonwealth Court abused their discretion or committed an error of law by holding that a public referendum question ordered to be placed on the ballot pursuant to a validly enacted ordinance that would have asked voters whether they wished to increase real estate taxes in order to repeal Allegheny

In arguing that the County Referendum Question is permissible, the County has the difficult task of explaining why its referendum question does not fail for the same reasons that the County argued that the Voter Referendum Question should fail. As noted, the County argued that the authority to set the rates of taxation rested with County Council under § 2962(b), such that a referendum to set the rate of the Drink Tax would be impermissible as an advisory, non-binding referendum. The argument is complicated by the County's need to demonstrate that its proposed ordinance does not involve an impermissible delegation of legislative authority.

██ Before this Court, the County asserts that the decision to place a referendum on the ballot is within the broad grant of powers under the Home Rule law. It notes that Article IX, § 2 of the Pennsylvania Constitution provides that a home rule municipality "may exercise any power and perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." The County, therefore, agrees with the Court of Common Pleas that the § 2962(b) vests the power to set rates of taxation with County Council. The County, however, challenges the court's determination that the County Referendum Question constitutes an impermissible delegation of that legislative authority. The County, citing *Appeal of Locke*, 72 Pa. 491 (1873), argues that the question is permissible because the County Referendum Question merely seeks to determine a state of facts upon

County's tax on the retail sale of alcoholic beverages constituted a non-binding, advisory question prohibited from being placed on the ballot?
The parties are also directed to address the following additional issue, if applicable:
(2) If the referendum proposed by petitioner is non-binding, whether specific constitutional or statutory authority is required before such measures may be placed on the ballot?
In addressing these issues, the parties are directed to follow the principles of statutory interpretation set forth in the Statutory Construction Act, 1 Pa.C.S. §§ 1901, *et seq.*, in order to ascertain the meaning of Section 2962(b) of the Municipalities Code, 53 Pa.C.S. § 2962(b).
*In re Allegheny County Drink Tax Referendum Directed Pursuant To Allegheny County Ordinance No. 24–08–OR Voter Referendum Petition Filed August 5, 2008*, 599 Pa. 152, 960 A.2d 833 (2008).

which an ordinance will operate, and not to set policy.[15] Here, the County asserts, Ordinance 24 made mandatory changes in the tax policy, but made the changes dependent upon facts to be determined by the County Referendum Question.

Moreover, the County contends that the County Referendum Question also meets the requirements of more modern explications of the proper delegation of legislative authority. It notes that in *Gilligan v. Pa. Horse Racing Commission,* 492 Pa. 92, 422 A.2d 487, 489 (1980), we stated that a delegation of authority must meet two tests. First, the basic policy choice must be made by the legislative body, and second, the legislation must contain adequate standards to guide the exercise of administrative functions. *Id.* The County argues that County Council made the basic policy choice to maintain revenues to fund the operation of County government at current levels. Therefore, the only fact to be determined by the voters was the method to maintain the levels either through the current mix of taxes or by abolishing the Drink Tax and increasing property taxes to obtain the same levels of revenue. Moreover, the County argues that the ordinance provides adequate standards for implementation because it is self-executing, dependent on the outcome of the referendum.

Thus, the County essentially argues that because the County Referendum Question is merely an expression of the views of the voters that triggers contingent legislation already enacted by County Council, then the question does not entail an impermissible delegation of legislative authority and does not involve the setting of taxation rates by voter referendum, as

15. In *Locke's Appeal,* the General Assembly passed an act allowing the residents of a ward in Philadelphia to determine if liquor licenses should be issued. The Act also provided for penalties for selling liquor without a license. The Court determined that, in enacting the legislation, the General Assembly did not improperly designate the power to make law regarding the licenses to the residents but instead merely provided for the residents to express their opinion on the issue of licenses. The court concluded that the vote did not make the law because the law already existed: "Indeed, it was not delegated to the people to *decide* anything. They simply declared their views or wishes, and when they did so, it was the *fiat* of the law, not their vote, which commanded licenses to be issued or not to be issued." *Id.* at 495–96 (emphasis in original).

did the Voter Referendum Question. Accordingly, the County argues that the County Referendum Question does not fail based on the power of County Council to set the rates of taxation, nor does it fail because of an improper delegation of authority.

Appellees contend that the courts below correctly kept the County Referendum Question off the ballot. Appellees claim that the County Referendum Question is improper for several reasons. First, they assert that the question would result in an improper delegation of legislative power. They argue that, rather than constituting a referendum to determine facts as in *Locke*, this case involves a classic legislative policy choice regarding which of two taxes should be imposed on the citizenry. A legislative body, according to the Appellees, should not be allowed to evade difficult policy choices. Indeed, Appellees note that the Home Rule Charter vests in County Council the right and the duty to levy taxes and adopt a balanced budget pursuant to Article IV, §§ 1 and 2, and argues that County Council should not shirk their primary duties of managing the budgetary and fiscal affairs of the County.

Second, Appellees claim that Ordinance 24, enacting the County Referendum Question, is void *ab initio* because there is no mechanism under the Home Rule Charter for County Council to enact a voter referendum. Appellees observe that Article XII of the Home Rule Charter provides for three actions involving voters. First, it addresses "Agenda Initiatives" whereby voters can propose ordinances by petition to County Council. Second, the Charter provides for "Voter Referendum" where the voters, upon attaining a number of signatures at least equal to five percent of the number of votes cast in the most recent gubernatorial election, can place a question on the ballot. Finally, Article XII allows for amendments to the Home Rule Charter to be submitted for referendum by an Ordinance of County Council or by petition of voters. Given the specific requirements of each item in Article XII, Appellees argue that only voters, upon attaining the requisite number of signatures, can call for a voter referen-

dum on an issue, other than a Charter Amendment. Additionally, Appellees assert that County Council cannot confer on itself the power to initiate referendum as it attempted to do with Ordinance 23. Instead, Appellees argue that an amendment to the Home Rule Charter would be necessary to allow County Council to initiate referendum. Indeed, Appellees argue that allowing County Council to initiate referendum would change the form of government of Allegheny County, which would require an amendment to Article XII of the Home Rule Charter, addressing voter initiatives and referenda. Given that changes in the form of government are prohibited for five years following a prior change in government, 53 Pa.C.S. § 2929, Appellees argue that a new change in government would be time barred given the referendum in May 2005 to consolidate row offices in Allegheny County, which amended Article II of the Allegheny Home Rule Charter.

Appellees also complain that the County Referendum improperly sets the "subjects of taxation," which violates § 2962(a)(6) of the Home Rule Law, in addition to the Allegheny County Code, § 5–1101.02(C)(3)(f). Moreover, they argue that the County Referendum Question violates the Allegheny County Code's provision that all referendum must be limited to a "single issue," because the County Referendum Question relates to the issue of property taxes as well as the issue of the Drink Tax. Allegheny County Code, § 5–1101.02(C)(1). Finally, Appellees argue that the County Referendum Question, which purports to increase property taxes in addition to abolishing the Drink Tax, improperly gives the voters authority to set the rates of taxation on residents, a power they claim is reserved to County Council under § 2962(b), pursuant to *Musewicz*, 925 A.2d 172.

In conclusion, the Appellees assert that if we allow the County Referendum Question on the ballot, then "[a]dvisory, government-initiated referenda will crop up whenever a governing body wants to duck its duty to represent the people. Pennsylvania will become a 'proposition state' but with a twist:

a host of provincial referendum questions will clog an already inefficient local government labyrinth." Appellees' Brief at 7.

We agree with the courts below and the Appellees that the County Referendum Question is insufficient to be placed upon the ballot. While we acknowledge the variety of reasons cited by Appellees for the County Referendum Question's failure, we focus on but one of the issues and conclude that County Council has no authority to enact a referendum under the Home Rule Charter. As stated, the Home Rule Charter provides three methods for voter involvement in governance. The Charter has no provision for County Council to propose voter referendum, outside of an amendment of the Charter. The only method provided for placing a voter referendum on the ballot is through the collection of, currently, 23,000 signatures of registered voters (five percent of the number who voted in the most recent gubernatorial election). The requirement that such a substantial portion of the electorate approve the placement of a question on the ballot protects Allegheny County's representative government. As previously noted by the Commonwealth Court, our Commonwealth's system of government disfavors governance by referendum:

> One of the prices paid for the creation of a representative democracy is the vesting by the electorate of trust and responsibility in its elected representatives. Discretion is placed within the hands of the municipal legislators and we must accept the lawful exercise of this discretion. The efficiency of government, its stability, and the protection of the public at large necessitates the creation of certain categories wherein the legislative prerogative is unfettered by the initiative and referendum processes. The electorate nevertheless is not helpless in defending itself against unlawful legislation in the statutorily excluded areas, for it is before our courts that one may come and assert the illegality of a particular piece of legislation. Furthermore, it is at the ballot box that a voter may express his disapproval of the legislative programs of his elected officials.

*Williams v. Rowe*, 3 Pa.Cmwlth. 537, 283 A.2d 881, 885 (1971). We agree with Appellees that to allow a majority of the nine

councilmembers to place a referendum on the ballot undermines the protections placed in the Home Rule Charter and potentially opens the County to a dramatic change in governance without an amendment to the Home Rule Charter. If County Council believes this is a proper change, it should propose an amendment to the Charter to determine if the voters of the County approve of County Council governing by referendum.[16] Only after a change in the Home Rule Charter can County Council potentially propose referendum. As this procedure was not followed in this case, we conclude that the Election Board and the courts below properly deemed the County Referendum Question insufficient.[17]

Accordingly, we affirm the decisions barring the Voter Referendum Question and the County Referendum Question from the ballot.

Chief Justice CASTILLE, Justice SAYLOR and EAKIN, Justice TODD, Justice McCAFFERY and Justice GREENSPAN join the opinion.

---

16. The Home Rule Charter provides County Council the power to propose amendments to the charter:

Amendment of the Charter.

a) This Charter may be amended by a referendum that is initiated by ordinance or by petition of the voters of the County in conformity with the provisions of the Pennsylvania Home Rule Charter and Optional Plans Law, as amended from time to time.

b) Any changes in the form of government as set forth in this Charter may not be submitted to the voters sooner than five years after the date on which this Charter is approved.

Home Rule Charter, Art. XII, § 3.

17. We do not speak to whether County Council could propose a referendum question regarding taxation even if the Home Rule Charter was amended, given the alternative arguments regarding the subject matter of the referendum question raised by the Appellees but not discussed in this opinion.